DANIEL HALEY vs. CITY OF BOSTON.

Norfolk.    November 15, 1905. — April 2, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Municipal Corporations. Words,* "Refuse."

The liability of a city or town undertaking work from which it seeks to derive
revenue or other special advantage for negligence of its servants or agents
engaged in the work, discussed with illustrations by SHELDON, J.

The work of removing ashes from dwelling houses in accordance with the direction
of an ordinance by teams of the sanitary division of the street department of a
city, without charge, is of a public nature, and the city is not liable to a person
injured through the negligence of the driver of such a team while engaged in
this work.

In R. L. c. 25, § 14, providing that a town may make a contract for the disposal
of its garbage, refuse and offal, the word "refuse" includes ashes produced in
dwelling houses.

The work of removing ashes from dwelling houses in accordance with the direction
of an ordinance by teams of the sanitary division of the street department of a
city, without charge, is none the less of a public nature because a charge suffi-
cient to cover expenses is made for the removal of steam engine ashes from fac-
tories and similar places by other teams of the same department.

SHELDON, J.    This is an action of tort brought to recover for
personal injuries alleged to have been received by the plaintiff
through the negligence of the driver of a cart belonging to the
defendant.    The driver drove the cart over the plaintiff's leg and
broke it.    There was evidence of the plaintiff's due care and of
the driver's negligence.    The judge ordered a verdict for the
defendant, and the only question now raised by the plaintiff's
exceptions is whether the defendant can be held to be responsi-
ble for the driver's negligence.

The driver was employed by the sanitary division of the street
department of the city.    This division moved garbage, house
offal and ashes from buildings in the city, without charge, except
that a fee of ten cents a barrel, just enough to cover the expense
of removing them, was charged for removing steam engine ashes.
No charge was made for removing ashes from dwelling houses.
From removing engine ashes, the city received an income of
something over $10,000 a year, and between $2,000 and $3,000
a year from the letting of space on scows of this division to

various persons for the removal of offal and waste matter, the sale of manure and the rent of part of a wharf. The total expenses of this division above income were $623,000. The cart which ran over the plaintiff was loaded with ashes taken from dwelling houses, and there were no steam engine ashes upon it.

The Revised Ordinances of 1898 of the city of Boston put in evidence provide in c. 1, § 8, that the various departments are "placed under the charge of the officers or boards designated therefor, under the general supervision and control of the mayor"; and in c. 38, § 1, that the street department, among other things, " shall remove from yards and areas, when so placed as to be easily removed, all ashes accumulated from the burning of materials for heating buildings or for domestic purposes, all house dirt, house offal, and all noxious and refuse substances." The ordinances also provide in c. 47, § 18, that " no person, other than employees of the city engaged in public work, shall, in any street, carry house dirt, house offal or other refuse matter, except in accordance with a permit from the board of health."

The general rule is well settled in this Commonwealth that a city or town which voluntarily undertakes work of a commercial character, from which it seeks to derive revenue or other special advantage, is liable like a private employer for the negligence of its servants or agents who are engaged therein. *Duggan* v. *Peabody,* 187 Mass. 349. *Little* v. *Holyoke,* 177 Mass. 114. *D'Amico* v. *Boston,* 176 Mass. 599. *Lynch* v. *Springfield,* 174 Mass. 430. So, too, if it has chosen to take the work of repairing or constructing a street or bridge out of the charge of the officers designated by law, and itself to assume direct control of the work, it may be held liable for the negligence of the servants or agents whom it employs for that purpose. *Butman* v. *Newton,* 179 Mass. 1. *Collins* v. *Greenfield,* 172 Mass. 78, 81. *Doherty* v. *Braintree,* 148 Mass. 495. *Waldron* v. *Haverhill,* 143 Mass. 582. *Deane* v. *Randolph,* 132 Mass. 475. *Hawks* v. *Charlemont,* 107 Mass. 414. So it may be held for negligence in the construction of water works or the laying of water pipes. *Lynch* v. *Springfield,* 174 Mass. 430. *Fox* v. *Chelsea,* 171 Mass. 297. *Stoddard* v. *Winchester,* 157 Mass. 567. *Perkins* v. *Lawrence,* 136 Mass. 305. *Hand* v. *Brookline,* 126 Mass. 324. Like liability has been held to exist in the case of appliances and supplies

used for the lighting of streets, on the ground that one of the purposes aimed at, at least incidentally, is to facilitate the use of the public ways for which the city is responsible, and to guard against the liability that might exist for accidents caused by any defect therein. *Dickinson* v. *Boston*, 188 Mass. 595. *Sullivan* v. *Holyoke*, 135 Mass. 273. Many of these cases have been put on the ground that the enterprise engaged in was partly of a commercial character, from which revenue or other advantage was expected to be realized. And where this element exists, liability has been maintained although the work engaged in was only partly of the nature of a business enterprise, being incidental both to public and to commercial undertakings. *Davies* v. *Boston*, 190 Mass. 194, decided since this case was argued. *Duggan* v. *Peabody*, 187 Mass. 349. *Collins* v. *Greenfield*, 172 Mass. 78. *Neff* v. *Wellesley*, 148 Mass. 487. *Oliver* v. *Worcester*, 102 Mass. 489. The liability for negligence in the construction or maintenance of sewers comes under this doctrine. *Manning* v. *Springfield*, 184 Mass. 245. *O'Brien* v. *Worcester*, 172 Mass. 348. But these exceptions never have been held in this Commonwealth to affect the general rule that a city or town is not to be held to any liability for the negligence of persons employed by it in work merely of a public character required or authorized to be done and undertaken without compensation in the performance of a public duty. *Taggart* v. *Fall River*, 170 Mass. 325. *Kelley* v. *Boston*, 186 Mass. 165. *Tindley* v. *Salem*, 137 Mass. 171. *Pratt* v. *Weymouth*, 147 Mass. 245. *Hafford* v. *New Bedford*, 16 Gray, 297. And this general principle of exemption from liability extends to negligence of persons employed in carrying out undertakings performed under authority of law in behalf merely of the public health, though of a character for which liability otherwise might be maintained. *Harrington* v. *Worcester*, 186 Mass. 594. *Benton* v. *Trustees of Boston City Hospital*, 140 Mass. 13.

It becomes material then to determine what is the character of this work of removing ashes from dwelling houses; and it seems to us to be work of a public nature. It is provided by statute that a town may contract for the disposal of its garbage, refuse and offal. R. L. c. 25, § 14. It is not a strained construction to include ashes under the term " refuse." This word is defined by

the Century Dictionary as " that which is refused or rejected ; waste or useless matter ; the worst or meanest part ; rubbish." Ashes have been held to be included within the meaning of this word in England. *Gay* v. *Cadby*, 2 C. P. D. 391. There is nothing inconsistent with this in the point decided in *St. Martin's* v. *Gordon*, [1891] 1 Q. B. 61, holding that clinkers produced in the furnaces of a hotel are not refuse of a trade, manufacture or business, although *Gay* v. *Cadby*, *ubi supra*, is criticised in the opinions. So in *State* v. *Howard*, 72 Maine, 459, refuse wood was held to include sawdust and shavings. And much of the reasoning of the court in *Vandine, petitioner*, 6 Pick. 187, as to house dirt and offal, is equally applicable to ashes produced in dwelling houses. So in *Commonwealth* v. *Cutter*, 156 Mass. 52. It is not material that under the statute above cited municipal corporations are simply authorized instead of being required to attend to this work. *Tindley* v. *Salem*, 137 Mass. 171.

We are of opinion that, unless this case is to be distinguished by reason of the fact that a charge was made for the removal of steam engine ashes, it must come under the rule that cities and towns are not to be held liable for negligence, in the words of C. Allen, J. in *Tindley* v. *Salem*, *ubi supra*, " when, acting under general laws applicable to all cities and towns alike, they have undertaken a particular service or work, which has no direct or natural tendency to injure any individual in person or property, and no element of special corporate advantage as a consideration for undertaking it, or of pecuniary profit or contribution from individuals especially benefited, either by way of aid in the performance of the work or of compensation for its use or benefit after its completion ; and where no pecuniary penalty or liability is imposed by statute in case of defective or negligent performance of the undertaking ; but where their action is exclusively and purely as a matter of public service, for the general and common good."

Nor do we think that the whole of this service was commercialized because a charge, just enough to cover the expense involved, was made for the removal of steam engine ashes. If this injury had been caused by the negligence of the driver of a cart used for the removal of such ashes, a somewhat different question would arise, as to which we express no opinion. It was said in

*Murphy* v. *Needham*, 176 Mass. 422, 424, 425, that the subject of inquiry was the nature of the duty in which the superintendent who was contended to have been negligent was engaged at the time of the accident; and in this case it appears that at the time of the accident the cart in question was removing only dwelling house ashes.   The ordinances of the city are in their terms applicable only to house ashes in contradistinction to steam engine ashes coming from factories or similar sources.   Revised Ordinances of 1898, c. 38, § 1 ; c. 47, § 18.   There is nothing to show that steam engine ashes were removed in the same carts, by the same drivers, or at the same times, with house ashes.   The latter were taken away as a matter of duty, solely for the public good, under the ordinances above quoted ; steam engine ashes seem to have been taken as a matter of contract merely, though doubtless with a view to public convenience.   The ordinances made a distinction between these two kinds of ashes; apparently the same distinction was observed in practice.   It cannot be said that the same rule of liability would apply to the separate classes which are thus distinguished from each other, or that they can be regarded as so far constituting one subject matter that the taking of compensation for one of them results in the commercialization of both.

*Exceptions overruled.*

*W. R. Bigelow*, (*W. B. Sprout* with him,) for the plaintiff.
*P. Nichols*, for the defendant.