## JAMES DALEY *vs.* INHABITANTS OF WATERTOWN.

Middlesex. March 28, 1906. — May 17, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, BRALEY, & SHELDON, JJ.

*Municipal Corporations. Nuisance.*

If a town, acting through its selectmen as its agents, in order to drain certain land taken by the town in widening a street under an order of the county commissioners, digs a ditch through the land of a private owner with his permission connecting with a drain already laid through his land, and thereby turns surface water from its natural course into a shallow pond with no outlet, causing it to overflow and flood a private way and the cellar of a landowner on the opposite side of the way, the landowner may recover from the town for the injury caused by the nuisance thus created.

TORT against the town of Watertown to recover damages for injury to the plaintiff's land and dwelling house on a private way leading into Arlington Street in that town resulting from the discharge of large quantities of water, dirt and filth upon the plaintiff's property, alleged to have been caused by the wrongful acts of the defendant. Writ dated November 20, 1902.

In the Superior Court the case was tried before *Aiken,* C. J., who at the close of the evidence submitted the case to the jury for the assessment of damages only. The jury assessed the damages of the plaintiff in the sum of $675, and the Chief Justice thereupon directed a verdict for the defendant and reported the case for determination by this court, with a stipulation of the par-

ties that if the direction was wrong judgment should be entered for the plaintiff in the sum of $675 as found by the jury, and that if the direction was right judgment should be entered for the defendant upon the verdict.

*James J. McCarthy*, for the plaintiff.

*J. E. Abbott*, for the defendant.

KNOWLTON, C. J.    The plaintiff is the owner of a house and lot in Watertown, fronting on a private way twenty feet wide leading into Arlington Street.    He built this house in May, 1891. Across the way is a shallow pond with no outlet, called Puffer's Pond, the nearest part of which is seventy feet distant from the plaintiff's land.    In its natural condition its surface is seven and fifty-eight one hundredths feet below the bottom of the cellar of the plaintiff's house.    Previously to February 28, 1902, the pond had not overflowed the private way or the plaintiff's land, or caused him any inconvenience in the use and enjoyment of his property.    On that day it overflowed its natural boundaries, and rose to such a height that on March 1 the private way and about three fourths of the plaintiff's land were covered with water, which entered the cellar of the dwelling house and filled it to a depth of from three to four feet.    The water was very filthy.    It receded but slowly and remained in the cellar for about a week, and caused serious damage to the house.    There was also evidence that again, in 1903, the pond overflowed and covered a part of the plaintiff's lot, and it also in 1904 and 1905 covered a portion of the private way and a small part of the lot near the way.    On the first occasion of the overflow the water covered the lots of many other persons and entered outhouses and privies erected on these lots, and the cellars and a basement of other houses.

In the year 1901 the defendant town, acting under an order of the county commissioners, did the work of widening Belmont Street in that part which lay within the boundaries of the town, and changed the direction of the flow of surface water over a part of the land which was added to the street.    Some years previously to the date of the order of the county commissioners the defendant town had constructed, and has ever since maintained, a fifteen inch pipe drain connecting with an open ditch from the corner of Arlington and Belmont Streets, to carry water from

the streets through land of Joshua Coolidge, a distance of two hundred feet or more, to Puffer's Pond. On May 14, 1901, the defendant obtained from Coolidge a license in writing to continue the use of this drain, and, if necessary, to construct a new drain over his land, to carry the water to Puffer's Pond. There was evidence from Coolidge that the natural course of the drainage of the land added to Belmont Street was in another direction, to a larger pond called Bird's Pond.

The defendant's superintendent of streets and town engineer testified to having taken levels and made plans for the drainage of Belmont Street, and he said that, in his opinion, the natural discharge of water from that street would be into Bird's Pond. He also testified that he ran levels for a drain to discharge this water down Arlington Street into Sawin's Pond, and thence to the Charles River, and made a report thereof, with an estimate of the cost, to the selectmen, but they decided to have the water discharged into Puffer's Pond, and obtained the license from Coolidge.

The evidence well warranted a finding that the overflow of water from Puffer's Pond caused a nuisance, to the damage of the plaintiff and other property owners, and that this was chiefly due to the inflow of water through the drain and ditch which the defendant town maintained. The evidence plainly shows that the responsibility for the construction and maintenance of this drain was upon the town, through the selectmen acting as its agents, and not upon the superintendent of streets as a public officer.

The remaining question is whether the construction of the drain was in violation of private rights. The right of the town to construct the way under the order of the commissioners could give it no right to lay a drain or dig a ditch through the land of a private owner, for the purpose of conducting water and discharging it there. *Franklin* v. *Fisk*, 13 Allen, 211. No one under the highway act could have an assessment of damages for the probable consequences of such a trespass, for the trespass could not be anticipated, and it would not be a natural and legitimate consequence of the laying out of the street. The only right of the town to maintain the drain in Coolidge's land was obtained through its license, but Coolidge could give the town no greater rights than he had himself. He had no right as a land-

owner to take surface water which naturally would drain in another direction, and which had been collected and brought to catch basins near his land, in a large quantity, and to carry it down into the pond in a stream, in such quantity as to make the pond overflow, and cause a nuisance to other landowners in the vicinity.   The evidence tended to show a material change in the condition of the pond, by discharging water into it which ought to have gone elsewhere.

It is true that cities and towns in the construction of streets, like private owners on their own lands, may deal with surface water in a reasonable way.   They may erect barriers to prevent it from coming upon the street from adjacent lands.   They may turn it from the streets upon abutting lands, if they do it in such a way as to cause no unreasonable damage.

In the present case there was something more than an ordinary disposition of surface water.   The jury might find that there was an unnecessary and unreasonable change in the course of surface water, to which the contour of the land was not adapted, so as to bring it down in large quantities to a place from which it could not escape, and where its presence would be likely to create a nuisance.

*Judgment for the plaintiff on the verdict.*