GEORGE L. JOHNSON vs. CITY OF SOMERVILLE.

Middlesex.  November 22, 1906. — May 15, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Evidence. Municipal Corporations.*

The decision of a city to undertake the public service of removing ashes from buildings in the city is not a legislative act and can be proved by evidence other than an ordinance.

Employees of a city, acting within the scope of their employment and in performance of the public service of removing and disposing of ashes from buildings in the city, but not in pursuance of any order of the city council, deposited ashes in a watercourse on private land and thus caused water to collect and percolate through the soil into a cellar on land of an adjacent owner, who brought an action against the city for damages thus incurred by him. *Held,* that such act, whether intentional or negligent, was an act done in the public service and was not in contemplation of law the act of the city and imposed upon the city no liability.

Discussion by LORING, J. of the question whether there is any distinction as to the liability of a municipal corporation for wrongful acts of its employees in the scope of their employment in work of a public nature, between acts of intentional and acts of negligent wrongdoing.

TORT for damage to the land of the plaintiff alleged in the declaration to have been caused by the unlawful filling up of a natural watercourse on adjacent land by the agents or servants of the defendant, whereby water was caused to percolate through the soil into a cellar on the land of the plaintiff. Writ in the Superior Court for the county of Middlesex dated April 16, 1903.

There was a trial before *Aiken*, C. J. The material facts are stated in the opinion.

At the close of the evidence, the defendant having requested a ruling as to each count of the declaration that upon all the evidence the plaintiff was not entitled to recover, and such ruling being refused, the case was submitted to the jury with instructions that the plaintiff could recover if the jury found the existence of a watercourse on the Gurney estate in the summer of 1898 and that material was deposited in it causing it to become filled as above stated, and thereby the water was caused to percolate and work through the soil into the cellar of the plaintiff's house.

The jury returned a verdict for the plaintiff, and the presiding judge thereupon reported the case for the consideration of this court, judgment to be entered on the verdict if upon the foregoing evidence he was entitled to recover; otherwise, judgment to be entered for the defendant.

*F. W. Kaan,* for the defendant.

*F. F. Sullivan (J. M. Sullivan* with him,) for the plaintiff.

LORING, J.   This case comes up on a report after a verdict for the plaintiff.

What the plaintiff complained of in this action was that his cellar was flooded because of ashes being dumped into a watercourse on the next lot of land owned by the heirs of Mary C. Gurney.   The jury must be taken to have found that there was a watercourse on the next lot, and that the plaintiff's cellar was flooded by reason of the dumping of ashes into such watercourse.

The question left open under the report is whether on any aspect of the evidence the jury were warranted in finding that the defendant city was liable.

It appeared that the watercourse in question was a brook which ran dry in summer.   There was evidence that when it ran dry a mud hole of stagnant water was left on the premises in or near its course.   The record of the board of health of the defendant city showed that in 1893 that board voted that the brook " must be drained to the sewer," and in 1896 the board passed the same vote with the addition that the work should be done by the heirs of Mary C. Gurney.

At the trial the plaintiff testified that the deposit of ashes began in 1896 and continued for four years; that he knew of the deposits and never made any attempt to prevent them.

The plaintiff then called one Huse, who testified that he "was superintendent of collection of ashes and offal of the defendant city from October, 1895, until February, 1902; that collections of ashes were made in the vicinity of the locus on Fridays during this period, by teams in the employment of the board of health or of the city, and on being asked which, he said in the service of the city; that the men who did the work were in the city's service; that the deposits began on the Gurney estate in 1896 or 1897, and continued three or four years; that during this filling he did not undertake to make an artificial course for any

water on the lot; that the Gurney estate was a convenient place to deposit ashes; that he used to like it; that collections of ashes were made throughout the whole of the defendant city on Fridays, but the only deposit that was made on the Gurney estate was what was collected nearest the lot, as a matter of convenience. On cross-examination he testified that when he had charge of the collection of ashes he and the men who drove the carts were engaged in the board of health department of the city, and that the dumping of ashes on the lot in question was first suggested to him by one Page who was the agent of the board of health; and on re-direct examination that when he said the men were employed by the board of health he meant by the city in the department of the board of health.

The chairman of the board of health testified that the health department had an appropriation "for carrying on all matters connected with the health department and the collection of ashes and offal," and that apart from that he had no specific fund for the payment of any particular work, no other fund. He further testified that: "If there has been any filling there [on the Gurney estate], it has been done not by orders of the board of health."

In spite of this denial on the part of the chairman of the board of health, it was perhaps a question for the jury whether Huse in dumping the ashes was acting for the board of health or for the health department of the defendant city, and we assume that to be so.

If the board of health of the defendant city, acting under R. L. c. 75, §§ 65, 67, had ordered the heirs of Mary C. Gurney to fill up the watercourse and on their not complying with that order had caused the filling here complained of to be done by Huse, it is conceded that the defendant city would not be liable.

If the filling here complained of was not found by the jury to have been made under an order of the board of health, they must have found that it was made by Huse of his own motion because he found it convenient to dump there the ashes collected by him, as an employee of the city, from the residences in that neighborhood.

The way and the only way in which the plaintiff has made

out that the act of Huse (and those acting with him) was in law the act of the defendant city was in the proof that what Huse did was done in the course of his employment by the defendant city in removing ashes from residences in the neighborhood.

It was decided in *Haley* v. *Boston,* 191 Mass. 291, that such a removal of ashes was a public service which any municipal body in the Commonwealth could undertake if it chose so to do. The removal of ashes is in this respect like a Fourth of July celebration, as to which see *Tindley* v. *Salem,* 137 Mass. 171.

The fact that in the case at bar no ordinance was put in evidence establishing a health department and providing that ashes should be removed by the health department established by it from private residences (*inter alia*) does not distinguish this case from *Haley* v. *Boston, supra.* The decision of a city to remove ashes or to celebrate the Fourth of July can be proved by any evidence and not necessarily by an ordinance. No ordinance appears to have been passed in *Tindley* v. *Salem, supra.* The decision by a city to remove ashes is not a legislative act and therefore need not be signified by an ordinance. In *Tindley* v. *Salem* this court held that the defendant city had decided to celebrate the Fourth of July, although it was not alleged that an ordinance to that effect had been adopted.

This brings us to the question of the defendant's liability in the case at bar if the jury found that Huse in removing the ashes was in the service of the city and not of the board of health acting as such.

If the plaintiff had been run over and injured through the negligence of a driver of one of the defendant's carts, while it was being used in the removal of the ashes here in question, he could not have recovered damages for the injury from the defendant city. That is established by the recent case of *Haley* v. *Boston,* 191 Mass. 291.

The ground on which it was contended that the city is liable here is that the rule applied in *Haley* v. *Boston* is confined to cases of negligence and does not apply to injuries caused by intentional acts, that is to say, by acts which if done on the plaintiff's land in place of being done on land not owned by the plaintiff would be ground for an action of trespass *quare clausum fregit,* as distinguished from an action on the case.

In the opinion of a majority of the court no distinction can be made between negligent and intentional acts.

In support of the distinction between negligent and intentional acts we have been referred to the dictum of Gray, C. J. in *Hill* v. *Boston*, 122 Mass. 344, found on p. 358, and the cases there cited.

In delivering the opinion in *Hill* v. *Boston*, Gray, C. J. said : "If a city or town negligently constructs or maintains the bridges or culverts in a highway across a navigable river, or a, natural watercourse, so as to cause the water to flow back upon and injure the land of another, it is liable to an action of tort, to the same extent that any corporation or individual would be liable for doing similar acts. *Anthony* v. *Adams*, 1 Met. 284, 285. *Lawrence* v. *Fairhaven*, 5 Gray, 110. *Perry* v. *Worcester*, 6 Gray, 544. *Parker* v. *Lowell*, 11 Gray, 353. *Wheeler* v. *Worcester*, 10 Allen, 591. So if a city, by its agents, without authority of law, makes or empties a common sewer upon the property of another to his injury, it is liable to him in an action of tort. *Proprietors of Locks & Canals* v. *Lowell*, 7 Gray, 223. *Hildreth* v. *Lowell*, 11 Gray, 345. *Haskell* v. *New Bedford*, 108 Mass. 208. But in such cases, the cause of action is not neglect in the performance of a corporate duty, rendering a public work unfit for the purposes for which it is intended, but it is the doing of a wrongful act, causing a direct injury to the property of another, outside of the limits of the public work."

This dictum was repeated in substance by C. Allen, J. in *Tindley* v. *Salem*, 137 Mass. 171, pp. 171, 172, and by Knowlton, C. J. in *Moynihan* v. *Todd*, 188 Mass. 301, 305. The Chief Justice in the last case added that : " Perhaps it [this doctrine] includes *Elder* v. *Bemis*, 2 Met. 599, and *Hawks* v. *Charlemont*, 107 Mass. 414, in which the reasons for the decisions were not very plainly stated, but in each of which the negligent act was a trespass causing a direct injury to the plaintiff's property outside of the limits of the highway. See also *Miles* v. *Worcester*, 154 Mass. 511; *Edgerly* v. *Concord*, 62 N. H. 8, 19; *Eastman* v. *Meredith*, 36 N. H. 284, 296; *Colwell* v. *Waterbury*, 74 Conn. 568, 573; *New York* v. *Bailey*, 2 Denio, 433."

If this distinction between negligent and intentional acts is law, the conclusion reached in *Manners* v. *Haverhill*, 135 Mass.

165, *Kelly* v. *Boston*, 186 Mass. 165, and *Barry* v. *Smith*, 191 Mass. 78, was wrong. And there was no necessity in deciding *Hawks* v. *Charlemont*, 107 Mass. 414, to create the rule of a town's liability when it elects to do by its own agents work which by the statutes is imposed on a public officer. The rule originally laid down in *Hawks* v. *Charlemont* has been followed and affirmed in *Deane* v. *Randolph*, 132 Mass. 475; *Sullivan* v. *Holyoke*, 135 Mass. 273; *Collins* v. *Greenfield*, 172 Mass. 78; *Butman* v. *Newton*, 179 Mass. 1; *Dickinson* v. *Boston*, 188 Mass. 595. See also *Tindley* v. *Salem*, 137 Mass. 171, 173; *Brookfield* v. *Reed*, 152 Mass. 568, 574; *Haley* v. *Boston*, 191 Mass. 291, 292.

In *Manners* v. *Haverhill*, 135 Mass. 165, the rule of *Hill* v. *Boston* was held to apply to a trespass committed by a superintendent of streets and " the men under him " in tearing down the plaintiff's building which the board of aldermen of the defendant city had ordered to be torn down under the mistaken belief that it was in a public way, and it was held that because of that rule the defendant city was not liable. In *Kelly* v. *Boston*, 186 Mass. 165, the plaintiff sought to make the defendant city liable for injury to an awning on his store caused by snow being thrown from the roof of the city hall. It was held that the rule here in question applied, and that the plaintiff could not recover. In *Barry* v. *Smith*, 191 Mass. 78, it was held that by reason of this same rule the members of a board of health were not liable for acts of trespass committed by men employed under them in conducting a hospital. Finally, this court in deciding in *Hawks* v. *Charlemont*, 107 Mass. 414, that the defendant town was liable for the trespasses there in question because and only because the work of repairing the bridge there in question was being done by the town through its agents in place of being left to the highway surveyor, in effect decided that the town would not have been liable had the trespasses been committed by the men employed by the highway surveyor.

In this apparent conflict of authority it becomes necessary to inquire into the meaning of the rule applied in *Haley* v. *Boston*, 191 Mass. 291.

In the first place the rule now under consideration has nothing to do with mere nonfeasance. It is settled that for non-per-

formance of a public duty resulting in damage to an individual, no action lies against the municipal body or against the person upon whom the public duty in question is put. _Riddle_ v. _Proprietors of Locks & Canals_, 7 Mass. 169. _Mower_ v. _Leicester_, 9 Mass. 247. _Russell_ v. _Men of Devon_, 2 T. R. 667. See also _Hill_ v. _Boston_, 122 Mass. 344, 351, where the cases are collected.

Again, the rule with which we are dealing has nothing to do with the liability of a city or town, nor has it to do with the liability of a public officer, for the tortious acts done by the city or town itself or by the public officer in person. Where the tortious act complained of is done in pursuance of a vote of the inhabitants of the town in town meeting (as was the case in _Lawrence_ v. _Fairhaven_, 5 Gray, 110), or in pursuance of a vote of the city council of a city (as was the case in _Perry_ v. _Worcester_, 6 Gray, 544), the town and city respectively are liable. The liability of a city under those circumstances was recognized in terms by Field, J. in _Manners_ v. _Haverhill_, 135 Mass. 165, 171. To thé same effect see _Edgerly_ v. _Concord_, 62 N. H. 8, 19. So where the tortious act is done by the public officer personally, or by some one in his presence and under his personal direction (as to which see _Elder_ v. _Bemis_, 2 Met. 599), the public officer is personally liable. This was decided in _Moynihan_ v. _Todd_, 188 Mass. 310, and in the earlier case of _Elder_ v. _Bemis_, 2 Met. 599. It was afterwards laid down as the rule to be followed at the new trial ordered in _Barry_ v. _Smith_, 191 Mass. 78, 91.

Lastly, the rule with which we are dealing has nothing to do with the liability of a municipal body as owner of land or of a building. Its liability as owner of land or of a building is the same as that of a natural person. _Miles_ v. _Worcester_, 154 Mass. 511. See also in this connection Field, J. in _Manners_ v. _Haverhill_, 135 Mass. 165, 171. To the same effect see _Eastman_ v. _Meredith_, 36 N. H. 284, 295, 296.

The rule we are dealing with here has to do with the liability of a municipal body (whether a city or a town), and with the liability of a public officer, for damages caused by the tortious acts of misfeasance done by employees in the course of their employment. Are such acts in law the acts of the city or town on the one hand, or of the highway surveyor or other public officer on the other hand? There is no contention that such

acts can be in legal contemplation the act of both the municipal body and the public officer.

The question and the only question in such a case is whether the relation of master and servant exists between the employee and the municipal body or between the employee and the public officer accordingly as one or the other is the defendant in the action in question.

We begin with the case of a highway surveyor, for that always has been taken as the typical case in respect to the rule now under discussion.

Suppose the act of misfeasance complained of is done by the highway surveyor himself, the town is not liable. Why? Because the relation of master and servant does not exist between the town and the highway surveyor. The highway surveyor is elected by the inhabitants of the town in town meeting. But that does not make him the agent or servant of the town. The election of the highway surveyor no more makes him the servant of the town than does the appointment of the police commissioner of the city of Boston by the Governor by and with the consent of the Council make the police commissioner the agent or servant of the Governor and Council. The way in which the highway surveyor is made highway surveyor, namely, by election in town meeting, is not material. When he is made highway surveyor he is an independent public officer, whose duties and powers are prescribed by statute. As we have said, the relation of master and servant does not exist between him and the town by which he was elected. If authority is needed for that proposition, it happens that it passed into decision in *White* v. *Phillipston,* 10 Met. 108 ; see p. 112. See also *Walcott* v. *Swampscott,* 1 Allen, 101, 103.

The next case to be considered is the case of an inhabitant of a town working out his taxes on a highway under the highway surveyor. Suppose he commits an act of misfeasance in the course of this work, causing an injury to the plaintiff, and an action is brought to charge the town for the damages. The town is not liable. The reason why the town is not liable is because the relation of master and servant does not exist between the inhabitant in question and the town. Again, it happens that this case is covered by our decisions. Bigelow, C. J. in

*Walcott* v. *Swampscott*, 1 Allen, 101, 103, said: "No one would pretend that a town would be liable for damages occasioned by the negligence or want of care of one of its inhabitants while engaged in working out the amount of his highway tax by making repairs on the roads. And yet we cannot see why such liability would not exist if the surveyor of highways, or the persons employed by him, can render the town chargeable for acts of carelessness while employed in performing similar labor. The truth is, that in neither case does the relation of principal and agent or master and servant exist."

It is equally plain that the relation of master and servant does not exist between the inhabitant working out his taxes and the highway surveyor under whose direction he works while working, but who has no power to refuse to employ him in the first instance or to discharge him afterwards. No case on this point has arisen. It is settled, however, that the relation of master and servant does not exist between the highway surveyor and one employed by him. *Barry* v. *Smith*, 191 Mass. 78. *A fortiori* it does not exist between the highway surveyor and the inhabitant.

Passing from the case of a misfeasance committed by an inhabitant working out his taxes by repairing a public way to the case of a man employed to do the same work.

The relation of master and servant does not exist between that employee and the town, and for that reason the town is not liable. The leading case is *Walcott* v. *Swampscott*, 1 Allen, 101.

Nor does the relation of master and servant exist between that employee and the highway surveyor, and for that reason the highway surveyor is not liable. There is no case in the books where a plaintiff has made an attempt to hold the highway surveyor, and this silence of authority would of itself be sufficient. But the attempt has been made to hold the members of a board of health in such a case, and the members of a board of health are public officers standing in this respect on precisely the same footing as highway surveyors. It was held in *Barry* v. *Smith*, 191 Mass. 78, that the relation of master and servant did not exist between members of a board of health and persons employed by it to perform the public service which it is their duty and power to have performed.

What then is the status of a man engaged in repairing a public

highway, who is employed by the highway surveyor and paid by the town, if he is the servant of neither?

The answer to that question is that his status is the same as that of the highway surveyor himself, and that of the inhabitant when working out his taxes by repairing the way. Each and all are in the service of the public. The relation of master and servant exists between them and the public, and if the public could be sued the public would be liable.

As the fact that the highway surveyor is elected by the town does not make him a servant of the town, so the fact that the highway surveyor selects the man employed by him to perform the work in question does not make that man a servant of the surveyor. Again, as the highway surveyor is not the servant of the town because the town pays him, so this employee is not the servant of the town because he is paid by the town out of the taxes collected by the town for the payment of liabilities incurred in the public service.

Both the inhabitant working out his taxes by repairing a public way and the men employed by the highway surveyor to do the same work have to obey the orders of the surveyor while employed in that work. But that fact does not make them or either of them the servant of the surveyor.

The same is true of the superintendent of a corporation who has power in behalf of the corporation to hire and discharge employees and whose directions those employees have to obey while they are in the service of the corporation. The relation between the highway surveyor and those hired by him to repair a highway is the same as the relation between such a superintendent and the men employed by him in behalf of the corporation whose superintendent he is. Where public work has to be done some one has to select the men to do it, and some one has to pay them. But when the work to be done is public work, the relation of master and servant does not exist between the employee and the person who selects the employee, nor between the employee and the public agency which pays the employee out of the public funds.

So far there is no conflict in the authorities. We now come to a class of cases where there is a conflict of authority, namely, cases where the obligation of performing a specified public duty

is put directly upon the city or town and it is given not only full power in the employment of men to perform it but also full power to prescribe the duties of the employees and the terms upon which they shall work.

Whether cities and towns in this second class of cases should or should not be held liable was a question quite apart from their liability in the first class, and while the non-liability of cities and towns in the first class was maintained it might well have been held that they were liable in the second class.

The law in England is the same as it is in Massachusetts in the first class of cases, (*Foreman* v. *Mayor of Canterbury*, L. R. 6 Q. B. 214, 218, 219,) while in the second class of cases, where the duty has been put upon the town, it is held that the persons employed by it are its servants and the town is liable for their acts of misfeasance. *Borough of Bathurst* v. *Macpherson*, 4 App. Cas. 256. *Municipality of Pictou* v. *Geldert*, [1893] A. C. 524. *Municipal Council of Sydney* v. *Bourke*, [1895] A. C. 433.

But in Massachusetts it was held that the same rule applied in the second as in the first class of cases. That is to say, it was held that in such a case the municipality selects a man to work in the public service and pays him out of the public funds in its hands; and that he is no more its servant and it is no more liable for his acts than it is when the man is selected by the highway surveyor and paid by the municipality. The first case is *Hafford* v. *New Bedford*, 16 Gray, 297. See also *Fisher* v. *Boston*, 104 Mass. 87; *Buttrick* v. *Lowell*, 1 Allen, 172; *Howard* v. *Worcester*, 153 Mass. 426; *Tindley* v. *Salem*, 137 Mass. 171; *Sampson* v. *Boston*, 161 Mass. 288; *Pettengell* v. *Chelsea*, 161 Mass. 368; *Butman* v. *Newton*, 179 Mass. 1, 6.

In this second class of cases, therefore, the employee is selected by the city or town to perform a public service, as is a man employed by a highway surveyor to repair a highway. In both cases he must obey the man or body by whom he is employed while he is employed, and he can be discharged by him or it. But the relation of master and servant does not exist between the two. In each case he is selected to perform a public service. While in that employment he is in the public service and is a servant of the public and not of the municipal body or of the public servant who selects him.

The decisions in Massachusetts as to the status of employees in the second class of cases mentioned above foreshadowed what would have had to be the result under the civil service law. St. 1884, c. 320. R. L. c. 19. Take for example the case of a veteran who is entitled to preference in being employed, R. L. c. 19, §§ 21, 22, 24, and cannot be discharged without a hearing before the mayor of the city or before the selectmen of the town by which he is employed as a veteran under the civil service act. He is without question in the public service and not in the service of that city or town.

Before the case of *Howe* v. *Newmarch*, 12 Allen, 49, it was doubtful whether a master was liable for the intentional as distinguished from the negligent acts of his servant. It was settled in that case that there was no distinction between the two provided the act done was done in the course of the employer's business. The contention that the master is liable for intentional acts but is not liable for negligent acts of a servant has no foundation in principle.

The authorities cited in *Hill* v. *Boston* and in *Moynihan* v. *Todd* remain to be considered.

Of the cases referred to in *Hill* v. *Boston*, 122 Mass. 344, the following cases, namely, *Proprietors of Locks & Canals* v. *Lowell*, 7 Gray, 223, *Hildreth* v. *Lowell*, 11 Gray, 345, and *Haskell* v. *New Bedford*, 108 Mass. 208, were cases of sewers and stand on the fact that sewers are enterprises from which the city derives a commercial benefit. These cases were not cited by C. Allen, J. in *Tindley* v. *Salem*, 137 Mass. 171, 172, when he repeated the dictum of Chief Justice Gray, and we assume that they were omitted for this reason. The same rule has been applied in New York to city waterworks. *Bailey* v. *New York*, 3 Hill, 531; *S. C. sub nomine New York* v. *Bailey*, 2 Denio, 433.

The act in question in *Anthony* v. *Adams*, 1 Met. 283, was held to be beyond the power of the defendant town, and judgment was rendered for the defendant for that reason.

The same result was reached in *Wheeler* v. *Worcester*, 10 Allen, 591. There also the defendant was successful.

In *Lawrence* v. *Fairhaven*, 5 Gray, 110, the defendant town by vote of the town, and in *Perry* v. *Worcester*, 6 Gray, 544, the defendant city by vote of the city council, directed the act to be

done for which it was held to be liable as an invasion of the plaintiff's right of property, as we already have pointed out. To the same effect see *Colwell* v. *Waterbury*, 74 Conn. 568, 573.

The only other case is *Parker* v. *Lowell*, 11 Gray, 353. There was no such vote in *Parker* v. *Lowell*. Nor was there such a vote in *Bates* v. *Westborough*, 151 Mass. 174, insisted on here by the plaintiff, decided after *Hill* v. *Boston*, and not cited in *Moynihan* v. *Todd*.

*Parker* v. *Lowell*, 11 Gray, 353, was an " action of tort for damages occasioned by an obstruction in a culvert running under River Street in Lowell." The plaintiff introduced evidence to show that between thirty-five and thirty years before the obstruction complained of this culvert was constructed over a natural stream called " Goose Brook." The judge who presided at the trial instructed the jury " that the burden of proof was upon the plaintiff to show that the injury sustained by him, if any, was attributable solely to the negligence of the defendants in omitting to remove obstructions from the culvert." The case before the full court was disposed of by Bigelow, J. in these words : " There can be no doubt that the defendants were liable in this action on the facts which must have been found by the jury in rendering a verdict for the plaintiff under the instructions given to them by the court. It is now the well settled rule of law in this Commonwealth that in all cases where a highway, turnpike, bridge, town way or other way is laid across a natural stream of water, it is the duty of those who use such franchise or privilege to make provision by open bridges, culverts or other means for the free current of the water, so that it shall not be obstructed and pent up to flow back on lands belonging to the riparian proprietors. And it is their duty not only to make such bridge, culvert or passage for water, but to keep it in such condition that it shall not obstruct the stream. *Rowe* v. *Granite Bridge*, 21 Pick. 344. *Anthony* v. *Adams*, 1 Met. 284. *Lawrence* v. *Fairhaven*, 5 Gray, 116. *Perry* v. *Worcester*, 6 Gray, 544." The removal of the obstructions in question was a matter for the highway surveyor, for whose acts the defendant city never has been held to be liable in any court in any country.

There are passages in the opinion in *Bates* v. *Westborough*, 151

Mass. 174, which indicate that the case there in question was the same as that in *Parker* v. *Lowell*. But in the opinion in that case the distinction here put forward between intentional and negligent acts was denied : " It seems that this irresponsibility is not confined to non-feasance or to damage in the highway to persons travelling there, but extends to cases of misfeasance, — see *Walcott* v. *Swampscott*, 1 Allen, 101 ; *Tindley* v. *Salem*, 137 Mass. 171 ; *Manners* v. *Haverhill*, 135 Mass. 165, — and to injury to persons or property outside of the highway. *Holman* v. *Townsend*, 13 Met. 297. *Smith* v. *Dedham*, 8 Cush. 522. See *Benjamin* v. *Wheeler*, 8 Gray, 409, and *Turner* v. *Dartmouth*, 13 Allen, 291, *Brailey* v. *Southborough*, 6 Cush. 141." The opinion then goes on to state : " But it is settled by the cases which we have cited (*Emery* v. *Lowell*, 104 Mass. 13, etc.) that there is no such immunity with regard to sewers and main drains. These belong to the cities and towns by statute ; Pub. Sts. c. 50, § 1 ; and although the road commissioners, who are given authority to maintain them by the same section, are probably no more the agents of the town than highway surveyors, when exercising highway surveyors' duties, (*Barney* v. *Lowell*, 98 Mass. 570 ; *Nealley* v. *Bradford*, 145 Mass. 561, 564,) still perhaps they have not so exclusive an authority over sewers, and at all events the interest of the towns in the sewers is so distinct from that of the public at large that they are held with reason to the ordinary responsibilities of owners. See further *Oliver* v. *Worcester*, 102 Mass. 489, 500 ; *Haskell* v. *New Bedford*, 108 Mass. 208 ; *Hand* v. *Brookline*, 126 Mass. 324." Whether the two cases of *Parker* v. *Lowell* and *Bates* v. *Westborough* stand on a separate ground is not before us in this case. It was said by C. Allen, J., in *Doherty* v. *Braintree*, 148 Mass. 495, 497 : " But the duty of building a road or bridge has not been deemed to fall within this general rule, and such liability has been held to exist where a town has voluntarily or compulsorily assumed the performance of such duty. *Hawks* v. *Charlemont*, 107 Mass. 414. *Deane* v. *Randolph*, 132 Mass. 475. *Waldron* v. *Haverhill*, 143 Mass. 582." It was held on the contrary in *Butman* v. *Newton*, 179 Mass. 1, that " The making of public ways is not only committed to the surveyors of highways or road commissioners, as is the matter of repairing them, but both matters are covered by one and the same sections

of the Public Statutes.   See Pub. Sts. c. 52, §§ 3,13.   Where a
city or town pursues the course thus provided for, it is not liable
for injuries caused by the negligence of those engaged in con-
structing a way.   *Taggart* v. *Fall River*, 170 Mass. 325.   This
rule was applied in *Jensen* v. *Waltham*, 166 Mass. 344, where a
street was being constructed by a board of street commissioners,
the existence of which was provided for in the charter of the
defendant city, (St. 1884, c. 309, § 23,) and who were invested
by an ordinance of the city with the duty of highway surveyors.
See *McCann* v. *Waltham*, 163 Mass. 344, 345."

But whatever the cases of *Parker* v. *Lowell* and *Bates* v. *West-
borough* stand for, they did not purport to be decided on the
distinction between negligent and intentional acts, and cannot
be taken to-day to be authorities on that point, at any rate in
the light of the decisions made in *Manners* v. *Haverhill*, 135
Mass. 165; *Kelly* v. *Boston*, 186 Mass. 165; *Barry* v. *Smith*,
191 Mass. 78; and the opinion in *Hawks* v. *Charlemont*, 107
Mass. 414.

The recent case of *Daley* v. *Watertown*, 192 Mass. 116, belongs
to the class of cases of which *Hawks* v. *Charlemont*, 107 Mass.
414, is the first and *Butman* v. *Newton*, 179 Mass. 1, is the last,
collected in *Haley* v. *Boston*, 191 Mass. 291, 292.   In *Daley* v.
*Watertown* it is stated that: "The evidence well warranted a
finding that the overflow of water from Puffer's Pond caused
a nuisance, to the damage of the plaintiff and other property
owners, that this was chiefly due to the inflow of water through
the drain and ditch which the defendant town maintained.   The
evidence plainly shows that the responsibility for the construc-
tion and maintenance of this drain was upon the town, through
the selectmen acting as its agents, and not upon the superintend-
ent of streets as a public officer."

To conclude :   The dumping of the ashes complained of in the
case at bar was not done on the land of the defendant but upon
land of the heirs of Mary C. Gurney.   It was not done in pur-
suance of an order of the defendant city itself, that is, of the city
council.   It was done by the city's superintendent in the per-
formance of a public duty from which the city derived no private
benefit.   *Haley* v. *Boston*, 191 Mass. 291.   In the opinion of a
majority of the court the act of dumping these ashes on the

Gurney land was not in contemplation of law the act of the defendant city, and for that reason it is not liable for it.

The maintenance of the nuisance caused by the ashes remaining where they were dumped would appear to be the act of the owners of the Gurney estate.   It is not the act of the defendant city.

*Judgment for the defendant.*