Isy Saperstein *vs.* City of Everett.

J. Walter Conrad & another *vs.* Same.

Middlesex.     November 16, 1928. — November 27, 1928.

Present: Rugg, C.J., Crosby, Carroll, Wait, & Sanderson, JJ.

*Municipal Corporations*, Maintenance of nuisance, Officers and agents, Collection of refuse. *Evidence*, Competency. *Actionable Tort*.

At the trial of an action of tort against a city for damage caused to property of the plaintiff by fire communicated from burning papers blown

from an adjacent dump, evidence, that from time to time oral arrange-
ments had been made between the owner of the dump and the mayor
for its use by the city, properly was excluded in the absence of evidence
that such arrangements were authorized or ratified by the city council.
Such an action could not be maintained on evidence that the street de-
partment of the city, in the performance of a public function without
compensation to the city, had collected refuse, including ashes and
papers, and had placed it upon the dump.

Two ACTIONS OF TORT. Writs dated respectively June
28, 1924, and July 29, 1924.

In the Superior Court, the actions were referred to an
auditor, and later were tried together before *Keating*, J.,
upon the auditor's reports and other evidence. At the close
of the evidence, the judge ordered a verdict for the defendant
in each action and reported them for determination by this
court. Material evidence is stated in the opinion.

*J. A. Post*, for the plaintiffs.

*H. H. Newton*, for the defendant.

RUGG, C.J. The plaintiffs by these actions of tort seek
to recover from the defendant city damages caused to their
property by fire communicated from burning papers blown
from a dump. The material facts are not in dispute. The
land used as a dump was near the property of the plaintiffs.
It was and had been owned for many years by one O'Riorden,
and, after his death, by his heirs. It was a considerable
tract of marsh land. Before 1910 and continuously since
then the defendant by permission of the owners had used
this tract for dumping rubbish, including ashes and papers,
which the city collected free of charge from the various
homes within its borders. Appropriations for this collection
and disposition of refuse had been made for many years by
the city council. The collection and dumping of it were
made by teams belonging to the city and used in its street
department, and the work was done by that department.
There was no contract in writing between any representative
of the city and the owners of the land as to its use for a dump.
No record was shown as to any arrangement for its use.
The most that can be said is that such use as was made was
by permission of the owners. No compensation was paid
by the city to the owners. There was evidence tending to

show that in the main the dumping was conducted so that the marsh land should be filled to an even level where refuse was dumped. There was no vote of the city council of the defendant touching the use of this land, and the care and disposition of refuse after it was dumped. Several other dumps were used for the disposal of refuse thus collected by the street department of the defendant. At some time officers of the city put a sign on the land and barred access to it except when actually using it. Others than the city used this land for a dump depositing there papers and other refuse, and it was the resort of junk dealers and children. There was no particular place on the land where refuse collected by the city was dumped as distinguished from the place where others deposited refuse. The auditor found that for aught that appeared from the evidence the fire which destroyed the buildings of the plaintiffs may have been kindled in papers dumped by parties other than the city.

The dump as maintained might have been found to be a nuisance in respect to the large amount of loose paper blowing about, the inflammable materials deposited there, the menace from frequent fires burning thereon, the exposure of the land to wind, and that damages came to the plaintiffs from this nuisance. The charter of the defendant provided that there should be a street commissioner who should have the powers of a surveyor of highways, but that the city council might confer such powers upon a board of public works. Pursuant to that authority an ordinance was enacted creating a board of public works and conferring upon it, among other powers, those of the street commissioner, and requiring the board to appoint a street commissioner.

Evidence was offered to the effect that from time to time oral arrangements had been made as to the use of the O'Riorden land for a dump between its owner and the mayor of the city. Although the mayor was the chief executive officer of the city and its executive powers were vested in him, this evidence was rightly excluded. Such arrangements do not appear to have been authorized or ratified directly or impliedly by vote of the city council. They did not bind the city to any liability for the condition of the land thus used.

The collection of refuse matter, including ashes and papers, when done without compensation by employees of the city performing public functions is a public duty undertaken for the general welfare. *Haley* v. *Boston,* 191 Mass. 291. The evidence showed at most that the dumping of the refuse upon the O'Riorden land was done with the consent of the owners by the superintendent of streets of the defendant in the performance of a public duty from which the city derived no private benefit.

All the facts which might have been found on the evidence here introduced show that the case at bar is in every particular covered by the decision in *Johnson* v. *Somerville,* 195 Mass. 370. The plaintiff there as here sought compensation for injuries flowing from the collection of refuse and ashes by a city. All the circumstances here disclosed are indistinguishable from those there under consideration in respect to the governing principles of law. In an exhaustive opinion by Mr. Justice Loring, it was there held, after a review in detail and a classification of all the relevant decisions, that the municipality was under no liability for injuries sustained by individuals arising from the collection of refuse undertaken by employees of the city purely for the public benefit and general welfare. The principle was examined again and given a new application in *Bolster* v. *Lawrence,* 225 Mass. 387. The principle of *Johnson* v. *Somerville* has been followed in numerous more recent adjudications. *Dupuis* v. *Fall River,* 223 Mass. 73. *Lead Lined Iron Pipe Co.* v. *Wakefield,* 223 Mass. 485, 487. *McGovern* v. *Boston,* 229 Mass. 394, 397. *Blaisdell* v. *Stoneham,* 229 Mass. 563, 565. *Stevens* v. *Dedham,* 238 Mass. 487. *Myers* v. *Boston,* 247 Mass. 36. *Graton* v. *Cambridge,* 250 Mass. 317, 319. *Gregoire* v. *Lowell,* 253 Mass. 119, 121. *Bartol* v. *Boston,* 259 Mass. 323. It would be but a repetition of what has been hitherto decided and settled to discuss the elaborate argument presented in behalf of the plaintiffs. It is all answered by the cases cited. It would serve no useful purpose to go over again propositions so recently and fully stated.

*In each case judgment is to be entered on the verdict for the defendant.*