CHARLES G. WOOD *vs.* INHABITANTS OF CONCORD.

Middlesex.    May 22, 1929. — June 27, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, & SANDERSON, JJ.

*Municipal Corporations,* Officers and agents, Contract. *Evidence,* Presumptions and burden of proof. *Road Commissioners. Public Officer. Agency,* Existence of relation, Scope of authority or employment. *County Commissioners. Way,* Public. *Words,* "Highway," "Specific repairs."

In an action of tort against a town to recover damages for the flooding of the plaintiff's land by reason of the obstruction of a brook caused by alleged improper construction of a bridge over the brook, there was evidence that the construction of the bridge was part of "specific repairs" on a "highway" ordered by the county commissioners to be made in accordance with an agreement between the selectmen of the town and the highway commission of the Commonwealth; that such agreement contained recitals that it was made on behalf of the town by the selectmen thereto duly authorized and that it related to "the improvement of a section of road in said town under" St. 1910, c. 525 as amended; that the work was to be paid for by the Commonwealth, the county and the town; that the town appropriated a sum of money for that purpose; and that the work of constructing the bridge was done under the supervision of the superintendent of streets of the town, appointed by the road commissioners thereof. There was no evidence that the construction was not in accordance with plans approved by the engineers of the Commonwealth, nor that the town passed any vote concerning this matter except the one making the appropriation. *Held,* that
    (1) The recital in the agreement as to the authority of the selectmen to make it was not evidence of their authority;
    (2) Although the terms of the agreement for convenience were in-

corporated by reference into the order by the county commissioners, no validity thereby was given to the agreement;

(3) St. 1910, c. 525, as amended, did not confer upon the selectmen the power to make the agreement in behalf of the town;

(4) In the absence of specific authority by the town to the selectmen to make the agreement, it was not binding upon the town: the selectmen had no authority merely by virtue of their office so to bind the town;

(5) The road commissioners, in constructing the bridge, were public officers and not agents of the town;

(6) The plaintiff was not entitled to recover.

It *was assumed* in the circumstances that the way in the action above described was a county road or "highway" in the strict significance of that word.

It *was assumed* that the work to be done under the county commissioners' order above described properly was termed "specific repairs."

CONTRACT OR TORT. Writ dated December 6, 1927.

Material evidence at the trial in the Superior Court before *Morton*, J., is stated in the opinion. The judge ordered a verdict for the defendant and reported the action for determination by this court.

*H. Horvitz*, for the plaintiff.

*S. Hoar*, (*L. Wheeler, Jr.*, with him,) for the defendant.

RUGG, C.J. This is an action of contract or tort to recover damages sustained by the plaintiff by the setting back upon his land of the waters of Mill Brook, a natural watercourse, caused by the alleged improper construction and maintenance by the defendant of a bridge over Mill Brook at a public highway in the defendant town known as the Cambridge Turnpike.

There was evidence tending to show that Mill Brook is a natural watercourse; that the plaintiff is an owner of land abutting thereon up the stream from the bridge; that prior to 1918 there had been an old wooden bridge carrying the highway across the brook and allowing the free passage of its waters; that in 1918 the defendant town at a legal meeting upon a sufficient article voted to appropriate money "to defray the cost of macadam pavement, under specifications approved by the Massachusetts Highway Commission" of the Cambridge Turnpike; that in the same year the county commissioners of Middlesex County, upon a petition by the defendant, directed that certain "specific repairs" be made

on the Cambridge Turnpike in accordance with a memorandum of an agreement between the Massachusetts highway commission and the selectmen of the defendant town, and agreed that the county of Middlesex would pay, upon the completion of the work, as its share of the expense, a sum not in excess of $6,000 to the town; that the agreement with the Massachusetts highway commission specified the span of the bridge over Mill Brook and the plan in conformity to which the bridge should be constructed, and contained a clause to the effect that all work done and materials furnished should be to the satisfaction of the Massachusetts highway commission; that the bridge was built and maintained under the supervision of the superintendent of streets, roads and bridges, appointed by the road commissioners of the town, who were elected as such by the voters, the defendant having previously adopted provisions of law governing the election and duties of road commissioners; that from a report made by the superintendent of streets to the road commissioners it appears that work was begun on the bridge over Mill Brook in 1919; that the design for its construction was changed by the State highway engineer, and a different foundation put in; and that considerable settlement occurred between 1919 and 1924, when the settlement appeared to have ceased. There was testimony to the effect that after the bridge was constructed there were greater natural obstructions in the brook below the bridge than in former years, and also that the volume of water in the brook at and above the bridge had been increased by a culvert to drain another State highway. There was also testimony tending to show that the bridge as constructed and settled obstructed the flow of the brook and that there was overflow of water upon the plaintiff's land and substantial damage thereby; that the substituted foundation used in the construction of the bridge was not suitable; and that the road commissioners described in their annual report the construction of the bridge and settlement. There was no evidence that the specific repairs ordered, including the bridge, were not made in accordance with the plans as prepared and modified by State engineers, that the defendant passed any votes touching the specific

repairs ordered including the bridge other than one making an appropriation for the work nor that the defendant appointed any agents or took any steps toward doing the work except to make the appropriation.

At the close of the evidence a verdict was directed in favor of the defendant on the ground that the defendant was not liable for the acts of those who built the bridge. By consent of the parties the question was reported for the determination of this court whether the evidence warranted the submission of the case to the jury on the point of the liability of the defendant.

There is nothing in the record showing explicitly whether Cambridge Turnpike is a town way, a county road, or a State highway. It is termed a "highway" in the report. This word connotes in some connections, and perhaps technically, a public way, original jurisdiction to lay out which is in the county commissioners, but in other connections it is used comprehensively to include all kinds of public ways. *Boston & Albany Railroad* v. *Boston*, 140 Mass 87. Since the county commissioners took jurisdiction to order specific repairs, it may be assumed that it was a county road and hence a highway in its strict signification.

There is in the record no vote of the town authorizing the selectmen in its name and behalf to execute the agreement with the Massachusetts highway commission to grade and construct the Cambridge Turnpike. It is recited in that agreement that it is executed by the defendant by its board of selectmen thereto duly authorized. Such recital in the absence of some statutory power or authorization by vote of the town is not evidence of authority. A town cannot be held liable on mere assertions of authority by those undertaking to act for it. *Brown* v. *Newburyport*, 209 Mass. 259. *Franklin Savings Bank* v. *Framingham*, 212 Mass. 92. *Simpson* v. *Marlborough*, 236 Mass. 210. Our attention has not been called to any provision of law or decision, and we are aware of none, upholding the power of the selectmen by virtue of their office to bind the town without vote to that end by a contract of this nature. The familiar rule as to the general presumption in favor of legality, *Nevins* v. *City*

*Council of Springfield,* 227 Mass. 538, 541; *Duffy* v. *Treasurer & Receiver General,* 234 Mass. 42, 50, does not stretch to cover this point. A municipality cannot be bound by contract by those purporting to act for it without something to show that the execution of the contract was duly authorized. *Bean* v. *Hyde Park,* 143 Mass. 245. *Meader* v. *West Newbury,* 256 Mass. 37. *Ducey* v. *Brunell,* 250 Mass. 114. *Canton* v. *Westbourne Cemetery Corp.* 251 Mass. 128.

There were imported into the order of the county commissioners by reference the terms of the contract with the Massachusetts highway commission. The legal effect of that reference was nothing more than to afford a particular description of the work to be done and to avoid setting it out at length in their order. No vitality or validity was given thereby to the contract between the selectmen of the defendant and the Massachusetts highway commission. No law confers upon the county commissioners any supervisory jurisdiction over contracts made by selectmen. It is recited in that contract that it relates to "the improvement of a section of road in said town under the provisions of Chapter 525 of the Acts of 1910 as amended." St. 1917, c. 276. See now G. L. c. 90, § 34, as amended by St. 1928, c. 316, § 6. It was thereby provided that the expenditure of money of the Commonwealth for highway improvement, such as is described in the contract, might be made where the selectmen of the town apply therefor by petition in writing. That statute, however, does not authorize the selectmen to contract to do the work in the name of the town without any vote of the town empowering them to make such contract. The contract here in issue was not an application or petition for the expenditure of money of the Commonwealth, although provision was made that a sum not exceeding $3,000 should be paid to the town by the Commonwealth upon the completion of the work.

The result is that it cannot be held that the contract made in the name of the town by the selectmen with the Massachusetts highway commission binds the defendant. It becomes unnecessary to discuss cases like *Lawrence* v. *Fairhaven,* 5 Gray, 110; *Perry* v. *Worcester,* 6 Gray, 544; *Sprague*

v. *Worcester,* 13 Gray, 193, and *Doherty* v. *Braintree,* 148 Mass. 495, because they are inapplicable to the facts here disclosed.

The order of the county commissioners for the work to be done on Cambridge Turnpike, as shown by the agreement between the Massachusetts highway commission and the defendant acting by its board of selectmen, including the construction of the new bridge, described that work as "specific repairs." We assume that it was correctly so described. St. 1917, c. 344, Part 2, §§ 10, 12, now G. L. c. 82, § 10. It was not an alteration, a relocation, or a new layout. *Bigelow* v. *Worcester,* 169 Mass. 390, 393. It is not necessary to inquire whether it would have been competent for the defendant town by special vote to determine that specific repairs should be made by public officers or by contract or by private agents. *Twombly* v. *Selectmen of Billerica,* 262 Mass. 214, 219. No action of this nature was taken so far as shown by the report. In the absence of such special vote, after the appropriation had been made, it became the duty of the road commissioners to do the work required by the order of the county commissioners. St. 1917, c. 344, Part 4, § 12; now G. L. c. 41, § 64.

Road commissioners, in performing the duties imposed upon them by the statutes or for the general welfare, act as public officers and not as agents of the town. *McManus* v. *Weston,* 164 Mass. 263. *Jensen* v. *Waltham,* 166 Mass. 344. *Butman* v. *Newton,* 179 Mass. 1, 5, 6, 7. *Smith* v. *Gloucester,* 201 Mass. 329, 333. *Johnson* v. *Somerville,* 195 Mass. 370. *Dupuis* v. *Fall River,* 223 Mass. 73. See *Bolster* v. *Lawrence,* 225 Mass. 387, 389. *Saperstein* v. *Everett,* 265 Mass. 195, 198.

The specific repairs in construction of the bridge were on this record done under the supervision of the superintendent of streets, roads and bridges appointed by the road commissioners of the defendant town. They thus were done by public officers pursuant to a public duty imposed by law. They were made in accordance with plans of engineers of the Massachusetts highway commission. They constituted a work undertaken for the general welfare. The defendant

town in its private capacity exercised no direction or control over the plans or the performance of the work. It passed no votes touching the matter except to make an appropriation to defray in part the cost. A substantial part of the cost was to be borne by the county of Middlesex and the Commonwealth. In these circumstances no ground for legal liability on the part of the defendant is shown for the acts of those who built the bridge.

It becomes unnecessary to inquire whether there was evidence to fasten upon the bridge the cause of the damage to the plaintiff. In conformity to the terms of the report the entry may be

*Judgment on the verdict.*