The action was continued nisi, and at the November term in Suffolk, the opinion of the Court was delivered by
Parsons, C. J.
(after a brief recital of the declaration.) The cause was tried on the general issue, and a verdict was found for the plaintiff agreeably to the judge’s direction.
The defendants have moved for a new trial for the misdirection of the judge in a matter of law; and they have also moved in arrest of judgment for the insufficiency of the declaration.
It appearing from the judge’s report, that while the raft remained stuck fast in the canal, a storm came, by which some wood, forming part of the raft, was lost, and some witnesses swore that there was water enough in the river for the raft to pass to the tide waters, but others swore that there was not water enough for the raft to pass over Hunt’s falls, — the judge directed the jury that they should give *in damages the value of the [ * 183 ] wood lost, and that the receipt of the toll was sufficient evidence against the proprietors, that the water was sufficient for the raft to pass.
The defendants have urged, that the wood lost ought not to be estimated in assessing the damages, for two reasons.
1. That the loss of the wood is not alleged as any part of the damages. This objection, we think, ought not to prevail. The allegation is, that by the sticking fast of the raft it was greatly damaged and injured. But a raft may be injured, not only by being broken, but also by a loss of a part of the materials of which it is composed. The allegation is therefore sufficient.
2. That the loss of the wood was owing to the plaintiff’s own neglect. If this were true, he certainly ought not to have recovered damages for that loss. The defendants have cited the case of Virtue vs. Bird, as supporting this objection. There the plaintiff had contracted with the defendant to haul a load of wood to T. and there deliver it at some convenient place, which the defendant should appoint. The plaintiff complained that through the neglect of the defendant to appoint a place, bis cattle remained so long as to be greatly injured. But the action did not lie, because the defendant might have unharnessed his cattle, or might have laid the timber m *154 any convenient place he thought proper. But, in the present case, what relief was in the plaintiff’s power, which he improperly neglected ? Ought he, when his raft was aground, to have taken his lumber on shore, and have abandoned his attempt to pass the canal ? Or might he not have prudently waited for more water to enable him to pass ? In our opinion, his conduct was prudent, not only as it regarded his own interest, but also the interest of the proprietors ; as the expense of transporting the whole contents of the raft by land to the bottom of the falls must have been considerable. However, while prudently waiting, a storm came, by which the wood was lost. This misfortune must fall on the defendants; as it did not arise from the imprudent neglect of the plaintiff.
[ * 184 ] *It is also objected, that the plaintiff ought to have been holden strictly to prove, that the other parts of the river were passable for his raft, notwithstanding the defendants had received the toll. But we are of opinion that, when the defendants received a toll, which they could not lawfully receive unless the other parts of the river had been passable for this raft, they shall not be admitted to allege any illegality of their own in their own defence.
Notwithstanding the general duty of the proprietors to render the river navigable for these rafts, and for boats from the northerly line of the state, to the head of the tide over Patucket and Wickasic falls, and also over Hunt’s. Varnum’s, and other falls; yet it also appears, that if the proprietors neglected for a certain time to make the locks and canals over Patucket and Wickasic falls, their powers as to these falls were vacated; while their powers as to those other falls remained. So if the other falls were not made navigable at a certain time, their powers respecting them failed, and their other powers remained.
Now, we cannot presume that any of these powers had become void without evidence. The objection, therefore, that Hunt’s falls were not passable, is immaterial; for it was the duty of the proprietors to keep Hunt’s falls navigable. Neither of the objections to the verdict can therefore prevail.
We now come to the motion in arrest of judgment, which has been made on two grounds.
The first is, that it is not the duty of the defendants to keep the canal in repair, sufficient for the passage of rafts and boats of the description mentioned in the declaration. This ground is endeavored to be maintained on the supposition that the powers granted to the corporation were a privilege, which might be waived or exercised at its discretion. But we think this supposition is not correct. When the act of incorporation first passed, it was optional with the *155 proprietors, whether they would or would not take the benefit of it; but after they had made their * election, [ * 185 J by executing the powers granted and claiming the toll, then the duties imposed by the tenth section, to make the canals, &c., attached ; from which they cannot be discharged, but by a seizure of the franchise into the hands of the government, or by a repeal of the act with their assent.
But further to maintain this ground, the defendants have argued that, from the plaintiff’s own showing, it is not the duty of the corporation to keep this canal in repair. By the statutes relating to this subject, if the corporation did not open this canal in seven years, for the passage of rafts and boats, then their powers as to this canal ceased. Now, the plaintiff alleges, say the defendants, that when the injury complained of happened, which was more than seven years from the passing of the statutes, the proprietors had then, and for a long time before, neglected to open and dig this canal.
If we were obliged to adopt the construction of the plaintiff’s allegation, on which the defendants insist, the objection ought to prevail. But attending to other parts of the declaration, we find it averred that this canal belonged to the proprietors, and that they, unmindful of their duty, neglected to open and dig the same of a sufficient depth, and permitted it to remain in a decayed state, and out of repair, and the passage to become and remain choked and filled up. We are now considering the declaration after a verdict; and the fair construction of this allegation is, not that they never opened and dug the canal sufficiently, but that they neglected to open it by digging and removing the collection of matters, which choked it and obstructed the passage. We are, therefore, satisfied that the motion in arrest cannot prevail on the ground we have been considering.
The other ground is, that no action lies against a corporation for a breach of its duty, by any person specially injured by the breach ; and that the only remedy is by information or indictment. This point has been argued by the * defendants’ counsel [ * 186 ] with much ability; and has had all the attention we could give it, in the short time the constitution of this Court has allowed us.
The argument, when compressed, is, that corporations having only a legal, and not a natural body, no capiatur lies against them ; that in all actions of trespass and trespass on the case, where the general issue is not guilty, if judgment be against the defendant, a part of the judgment at common law is an entry of a capiatur ; that, therefore, no such actions lie against a corporation at common law ; and *156 the statute, taking away the necessity of the entry of a capiatur, does not authorize an action which did not lie before.
That a process to take the body of a corporation does not lie, is certainly true ; but the defendants must show that in all actions of trespass, a capiatur against the defendant may, from the nature of the action, be entered. In 21 Edw. 4, 7, 12, 27, 67, it is holden that a corporation cannot be beaten, nor beat, nor commit treason or felony, nor be imprisoned for a disseisin with force, nor be outlawed, nor a copias in debt be awarded against them. These principles result from the nature of an aggregate corporation.
But the defendants have relied on an opinion of Thorp, J., in 22 Ass. pl. 67. He there says that trespass does not lie against a cor poration aggregate by its corporate name, for a copias and exigent do not lie against it. That a copias and exigent do not lie against a corporation, is evident; but that no action of trespass lies, is questionable. For it is agreed that a corporation may be fined on indictment, and the fine levied by distress ; and why may not a corporation be amerced, and the amercement collected in the same manner ? This has led us to look into the ancient law on this subject ; and we find Thorp’s opinion overruled as to certain trespasses. In 31 Ass.pl. 19, a corporation are holden answerable in assize as a disseisor with force. In 8 H. 6, 1, 14,6, an aggregate [ * 187 ] corporation was holden answerable * in trespass for dis-training the plaintiff’s cattle, until he paid a toll which he was not bound to pay. Several other cases are mentioned in Theloal’s Dig. lib. 4, c. 13, as trespass against a corporation for disturbing the plaintiff in the profits of his liberties ; or for disturbing him in holding a leet. It is therefore very clear, from the examination of the old books, that some actions of trespass might, at common law, be maintained against aggregate corporations. And, as in these actions no capiatur could be entered, the omission of this entry can be no objection to actions of trespass on the case. The foundation of the defendants’ argument seems to fail them.
Let us now leave the ancient cases, and resort to the maxims of the common law, which are founded in good sense and substantial justice. It is one of these maxims, that a man specially injured by the breach of duty in another, shall have his remedy by action. If the breach of duty be by an individual, there is no question ; and why should a corporation, receiving its corporate powers and obliged by its corporate duties with its own consent, be an exception, when it has, or must be supposed to have, an equivalent for its consent'
We distinguish between proper aggregate corporations, and the inhabitants of any district, who are by statute invested with particular powers without their consent. These are .in the books some *157 times called quasi corporations. Of this description are counties and hundreds, in England; and counties, towns, &c., in this state. Although quasi corporations are liable to information or indictment, for a neglect of a public duty imposed on them by law: yet it is settled in the case of Russel Al. vs. Inhabitants of the County of Devon, (35) that no private action can be maintained against them for a breach of their corporate duty, unless such action be given by statute. And the sound reason is, that, having no corporate fund, and no legal means of obtaining one, each corporator is liable to satisfy any judgment rendered against the corporation.
This burden *the common law will not impose, but in [ * 188 J cases where the statute is an authority, to which every man must be considered as assenting. But in regular corporations, which have, or are supposed to have, a corporate fund, this reason does not apply.
Among the modern cases, there is one which seems in its principles to apply directly to the case before us. It is the case of The Mayor of Lynn, in error, vs. Turner. (36) Turner sued the corporation of Lynn Regis for not repairing and cleansing a certain creek, in which the tide ebbed and flowed, as from time imrnemo rial they had been used, by which he lost the use of his navigation. The declaration contained a number of counts, in one of which the special damage alleged was that the plaintiff was obliged to carry his corn round about. At the Common Pleas, judgment on nil dicit was rendered on all the counts. For the plaintiff in error it was argued, that the creek, as described, was a highway; and as in one of the counts no special damage was alleged, the action did not lie. But Lord Mansfield and the court said that a creek, in which the tide ebbed and flowed, was not necessarily a highway; that the corporation were bound by prescription, and it might be the very condition or terms of -their charter. And the judgment was affirmed. By this decision it is settled that case will lie against a corporation for neglect of a corporate duty, by which the plaintiff suffers. How far a special damage must be alleged, we need not now decide.
For the proprietors, in support of their motion, a reference was made to the several statutes creating our turnpike corporations, in which an action is given to any person specially injured by a neglect in repairing the road. This provision was cumulative, and introduced ex majori cautela by the framers of the bills, and is no objection to our present construction of the law.
There appears to us, upon the whole, no sufficient ground to sta> *158 judgment; and, as the exceptions to the verdict cannot prevail, the plaintiff must have judgment, (a)

Judgment on the verdict.

 2 D. & E. 667.

 Cowp. 86.

 [Vide Yarborough & Al. vs. The Gov. and Comp. of Bank of England, 16 East, 6 — Chestnut Hill Corp. vs. Rutter, A Searj. & R. 6. — Townsend vs. Susquehannah Turnpike Corp., 6 Johns. 90. — Angell & Ames, 220. — Sed vide Glover, 96. — Brownlow, 175. —Ed