KUMAZO MATSUMURA *v.* COUNTY OF HAWAII.

Exceptions from Circuit Court, Fourth Circuit.

Argued January 23, 1908.                    Decided April 28, 1908

Hartwell, C.J., Wilder and Ballou, JJ.

Counties—*liability for torts.*

> A county in Hawaii is liable for injury to private property in the nature of a trespass caused by the negligent act of a road employee while repairing a public highway.

Matsumura v. County of Hawaii, 19 Haw. 18.

OPINION OF THE COURT BY BALLOU, J.

(Wilder, J., dissenting.)

Plaintiff having brought an action of tort against defendant, a demurrer to the declaration was sustained and the case comes here on exceptions. The declaration alleges that one Keola, while employed as an agent and servant of the defendant in maintaining and constructing a public highway "did willfully, negligently and in total disregard of the rights and property of the plaintiff, divert the course of a large stream of water, then and there flowing in a certain wooden flume, that the said large stream of water so diverted by the agent and servant of the said defendant did rush with great force into and undermine a certain large mound or bank consisting of earth and rocks, by the force of the water diverted as aforesaid, was loosened from its foundations and by the forces of gravity moved from its said foundations and with great force, struck the store, dwelling house, stables and outhouses of the said plaintiff in such a manner that the said dwelling house, store, stables and outhouses, together with the contents thereof consisting of house-hold furniture, cooking utensils, personal effects, stock of goods and merchandise, all the property of the said plaintiff, and of the total value of $10,000.00, were utterly demolished and destroyed to the damage of the plaintiff in the sum of $10,000.00."

The sole question for decision is whether the defendant is liable upon the facts alleged. Defendant was created a body corporate and politic by the county act of 1905 (S. L. 1905, Act 39.) It has power, among other things, "to open, construct, maintain and close up public streets, highways, roads, alleys, trails and bridges within its boundaries," and "to do all things necessary and proper to carry into execution the foregoing." It also has power to sue and is liable to be sued in its corporate name.

Matsumura v. County of Hawaii, 19 Haw. 18.

The question of the liability of public corporations, such as cities, towns and counties, for various classes of torts is one upon which there is a wide divergence of opinion. The general rule of the common law to afford redress for wrongs suffered by individuals would seem to throw the burden of argument upon those who would exempt any corporation, public or private, from the general doctrine of liability for its torts. 1 Cooley, Torts, 3d ed. *141; 5 Thompson, Negligence, Sec. 5796. The numerous exceptions to this rule in the case of public corporations may be roughly classified as follows:

(1) Cases exempting the public corporation from liability on the ground that it is part of the sovereign power and cannot be sued without its consent. This exemption is usually allowed to counties (*Fry v. County of Albemarle*, 86 Va. 195; 9 S. E. 1004) and denied to cities, (*Rankin v. Buckman*, 9 Or. 253) a distinction without a difference. (*Eastman v. Clackamas County*, 32 Fed. 24.) Upon this principle the nature of the act complained of would be immaterial, the sovereign character of the defendant being a complete defense.

(2) Cases exempting the public corporation from liability for a class of acts called governmental in their nature, (*Hughes v. County of Monroe*, 147 N. Y. 49 but holding it liable for other acts called private or corporate. *Coburn v. San Mateo County*, 75 Fed. 520. Upon this principle the character of the defendant, whether city or county, would seem to be immaterial.

(3) Cases exempting the public corporation from liability on the ground that the relation of master and servant does not exist between the defendant and the officer directly responsible. (*Johnson v. City of Somerville* (Mass.) 81 N. E. 268.) This reason would seem to be independent both of the character of the defendant and the nature of the act, and to depend on the position and mode of appointment of the negligent officer.

(4) Cases in which the legislature has made specific enactments giving or withholding rights of action in certain cases.

Matsumura v. County of Hawaii, 19 Haw. 18.

*Baltimore County Commissioners v. Wilson,* 54 At. 71. These require no further mention than to be distinguished from mere legislative creation of the defendant corporation and the enumeration of its powers and duties, which still leaves the question of liability one of general law. It may be noted in this connection that the recent Municipal Act in disposing of cases which may be pending against the County of Oahu apparently assumes that actions for damages may have been brought (S. L. 1907, Act 118, Sec. 5.)

The two principal classes being those allowing exemption on account of the nature of the tort and those allowing exemption on account of the character of the defendant, it will be convenient to consider first as to whether a municipal corporation would be liable in this action, and, second, whether the County of Hawaii is exempt on account of its being a county.

The declaration is somewhat meager in its statement of the connection between the proposed repair of the highway and the diversion of the water which caused the damage to the plaintiff's land, and it is difficult to infer whether the injury was the necessary result of the diversion of the water or whether it arose from the negligent manner in which the act was done, but on either theory it states a cause of action as against a municipal corporation. It is true that while given the power to maintain highways the duty of doing so is not specifically enjoined upon the defendant (S. L. 1905, Act 39, Sec. 9), and therefore that no action would lie for nonfeasance in failing to exercise this power, but when the municipality undertakes to exercise such a power and its officers or agents do the work negligently or unskillfully any person damaged in consequence thereof may maintain an action against the municipality. 5 Thompson, Negligence, Sec. 5788.

Of the many confusing and usually indefensible exemptions from municipal liability none seems to fit this case. This is not a case of negligent failure to repair a public work but lack

of due care in the execution of work ordered by the corporation. 2 Cooley, Torts, 3d ed. *741. It is not the act of an elective or public officer of whom the relation of master and servant may be doubtful but of a servant selected by the supervisors themselves. 5 Thompson, Negligence, Sec. 5792. It is not the act of the county in planning a public work (*Johnson v. District of Columbia,* 118 U. S. 19), but in the ministerial function of carrying out that plan. 5 Thompson, Negligence, Sec. 5794. The only possible exemption applicable seems to be that taken in those cases which draw a distinction between the governmental and corporate functions of a municipality (*Moffitt v. Asheville,* 103 N. C. 237.) The typical case is that of nonfeasance in the face of a duty imposed upon the corporation, and it is upon this class of cases, which includes actions for injuries resulting from the negligent failure to repair highways, that there is the greatest conflict of authority. The leading cases denying liability upon this are *Hill v. Boston,* 122 Mass. 344, and *Detroit v. Blackeby,* 21 Mich. 84. Opposed to these are the cases represented by *Barnes v. District of Columbia,* 91 U. S. 540, repeatedly followed (*District of Columbia v. Woodbury,* 136 U. S. 450) and cited with approval even when subsequent decisions have been controlled by local or admiralty law. *Detroit v. Osborne,* 135 U. S. 492; *Workman v. New York City,* 179 U. S. 552, 574.

We need not enter into a discussion of these authorities, however, nor even into those holding that the repair of highways is properly classed as a corporate and not a governmental function (*Coburn v. San Mateo County,* 75 Fed. 520; *Barree v. City of Cape Girardeau,* 197 Mo. 382; 95 S. W. 330), because we are of the opinion that under no proper conception of the doctrine of municipal immunity in the performance of governmental functions can it be held to include immunity for negligence resulting in the direct invasion of plaintiff's private right as an adjacent land owner.

Before examining the authorities we may restate the question from a different point of view. It will be observed that the injury in any case may result from nonfeasance or misfeasance and that the latter class may be again divided so that we find injuries resulting from (1) nonfeasance, (2) the negligent performance of the act, (3) the necessary consequence of the act and (4) intentional trespass. Each of these four may in turn result in the invasion of (a) public or (b) private rights. When we take into consideration the fact that almost every case of negligence may be viewed indifferently either as omission or as commission (1 Street, Foundations Legal Liability, 86,) it is not strange that there is confusion in the application of the theory of governmental immunity among these classes of cases.

We have already left the subject of nonfeasance resulting in the invasion of a public right as unnecessary to decide in this case. At the other extreme lies intentional trespass upon a private right for which the municipality is always held responsible (*Hawks v. Charlemont,* 107 Mass. 414; *City of Omaha v. Goft,* 60 Neb. 57; 82 N. W. 120) except in those cases which deny the existence of the relation of master and servant. *Manners v. Haverhill,* 135 Mass. 165. Such cases naturally find no difference in principle between nonfeasance and misfeasance. *Johnson v. City of Somerville* (Mass.) 81 N. E. 268. The matter of the relationship of master and servant in public corporations, while not arising upon the declaration in this case, is, however, another subject upon which there is considerable conflict. *Workman v. New York City,* 179 U. S. 552.

The case at bar is concerned only with the invasion of a private right through misfeasance of the defendant's agent, either as a necessary result of his wrongful act or because of the negligent manner in which it was done. Upon either theory a municipal corporation would be liable.

It is true that the horse of a fire department trespassing on

the plaintiff's lawn has been held to be doing so in a governmental capacity (*Cunningham v. Seattle,* 40 Wash. 59; 82 Pac. 143), and that a city dump cart loaded with house ashes may run over pedestrians with impunity while one loaded with steam engine ashes might give a right of action (*Haley v. Boston,* 191 Mass. 291; 77 N. E. 888; 5 L. R. A. (N. S.) 1005), but these are merely the reductio ad absurdum of those cases which fail to observe limitations which have been frequently pointed out. 2 Dillon, Mun. Corp. 3d ed. Sec. 950. Even *Hill v. Boston,* 122 Mass. 344, 358, the leading case on this subject, cites authorities holding the municipality liable in cases like the present, saying:

"In such cases, the cause of action is not neglect in the performance of a corporate duty, rendering a public work unfit for the purposes for which it was intended, but is the doing of a wrongful act, causing a direct injury to the property of another, outside the limits of the public work."

This limitation was pointed out and applied by Chief Justice Shaw in an early case. Referring to the privilege extended to governmental work he says:

"But this presupposes that the public work thus authorized will be executed in a reasonably proper and skilful manner, with a just regard to the rights of private owners of estate. If done otherwise, the damage is not necessarily incident to the accomplishment of the public object, but to the improper and unskilful manner of doing it. Such damage to private property is not warranted by the authority under color of which it is done, and is not justifiable by it. It is unlawful, and a wrong, for the redress of which an action of tort will lie." *Perry v. City of Worcester,* 6 Gray 544.

A leading case in New Hampshire, which classes the building of an unsafe town hall as a neglect to provide a safe place for holding the town meeting and consequently the mere omission of a public duty, nevertheless cites with approval a line of cases, including *Delmonico v. The Mayor, etc., of New York,* 1 Sandford 222, in which cities and towns have been held liable

for private injuries done by them in the execution of public work, and says:

"The plaintiff, in cases of this character, does not recover on the ground that he has been denied any public right which the corporation owed to him as a citizen of the town, or because he has suffered an injury in the exercise of a public right, from neglect of the town to perform a public duty. The corporation being authorized by law to execute the work, if, in their manner of doing it, they cause a private injury, they are answerable in the same way and on the same principle as an individual who injures another by the wrongful manner in which he performs an act lawful in itself. It has been sometimes made a question, whether in the particular case the corporation were liable as principals for the conduct of those who performed the work on their account; but where a work is once conceded to be done by the corporation, it would seem to be clear, on authority and general principles, that a corporation, public or private, must be held liable like an individual for injuries caused by negligence in the process of executing the work." *Eastman v. Meredith,* 36 N. H. 284, 295.

A recent case in the same state contains an admirable summary of the limitation of the doctrine of governmental immunity in those states which adhere to it. *Rhobidas v. City of Concord,* 70 N. H. 90; 47 At. 82. From the authorities there collected it appears that in those jurisdictions towns are not liable at common law (1) for the improper discharge of a purely governmental function (2) for neglect to perform duties imposed upon them without their consent and (3) for the acts of officers whose powers and duties are so fixed by the legislature that the town cannot control or direct their actions, but that they are liable (1) for negligent acts (even in the discharge of imposed duties) which interfere with the rights of others, provided such rights do not depend upon the imposed duty (2) for their acts concerning property not employed in a public use, and (3) where duties of a public nature are voluntarily assumed.

It will be observed that in none of these general statements is any distinction sought to be taken between injury resulting from the necessary consequences of the negligent act and that resulting from the negligent manner in which the act was performed. No difference in principle between these cases is apparent, nor is any recognized by the authorities. *Ashley v. City of Port Huron,* 35 Mich. 296, in which the injury was the necessary result of the work, cites as "an action like the one at bar" *Nevins v. City of Peoria,* 41 Ill. 502, in which plaintiff's claim was "that the work undertaken by the city was badly and carelessly done and never completed, and that, in consequence thereof, his house and grounds were flooded at every considerable rain" and *Alton v. Hope,* 68 Ill. 167, in which a gutter was negligently allowed to get out of repair. In *Wallace v. City of Muscatine,* 4 Greene (Ia.) 276, a declaration alleging "improper and unskilful construction of certain culverts, drains and gutters made by the city, by which the water was turned and flowed upon the plaintiff's premises," was held to state a cause of action. Other courts have held municipalities liable for injury to plaintiff's land resulting from negligence in the construction of a bridge which turned the current (*Stone v. Augusta,* 46 Me. 127) or in the construction of one which proved insufficient to allow freshet water to pass through (*Allentown v. Kramer,* 73 Pa. St. 406), or in the construction of a culvert with the same defect (*Rochester White Lead Company v. City of Rochester,* 3 N. Y. 463), or in digging a ditch which let water on plaintiff's land (*Kobs v. City of Minneapolis,* 22 Minn. 159), all without alluding to any possible distinction as to whether the negligence was in doing the work or in the manner of doing it. Of the many cases of negligence resulting in turning surface water on plaintiff's land we may cite *Inman v. Tripp,* 11 R. I. 520; *Gilman v. Laconia,* 55 N. H. 130, and *Town of Princeton v. Gieske,* 93 Ind. 102. Injury by the dumping of dirt stands on the same footing. *Hendershott v. City of Ottumwa,* 46 Ia. 658.

If, then, a municipal corporation would be liable in this action, is there any authority for the exemption of the County of Hawaii, which has been expressly created a corporation empowered to sue and be sued (S. L. 1905, Act 39, Ch. 4, Sec. 9), upon the ground that it is a county?

The foundation of the immunity of counties from liability for torts is the case of *Russell et al. v. The Men Dwelling in the County of Devon,* 2 Term Rep. 667, but the question in that case as put by Lord Kenyon, was "whether this body of men who are sued in the present action, are a corporation, or qua a corporation, against whom such action can be maintained," and the decision is based on the lack of corporate capacity of the defendants and the inexpediency if not the impossibility of holding the inhabitants at large responsible for the tort. It is difficult in reading the opinions in that case to escape the conclusion that if the suit had been against a county expressly created a corporation with power to sue and be sued the result would have been different. As Baron Pollock said in a subsequent case: "We think it clear, after a full consideration of the case, that the only reason why an action would not lie was, because the inhabitants of the county were not a corporation and could not be sued, a difficulty that was got rid of by the statutes of Hue and Cry, and other statutes giving a specific remedy against the hundred." *Makinnon v. Penson,* 8 Exch. 319; 18 Eng. Law & Eq. Rep. 509. Nevertheless the case of *Russell v. Men of Devon,* as it is usually cited, has become authority for the proposition that "at common law a county could not be sued," (*Lyell v. Board of Supervisors of St. Clair County,* 3 McLean, 580) and was soon applied indifferently whether the defendant county was a corporation or not.

This doctrine, so far from resting on "historical" grounds, is the result of the gradual growth of error, which can be easily traced in the earlier American cases.

Matsumura v. County of Hawaii, 19 Haw. 18.

In *Mower v. The Inhabitants of Leicester,* 9 Mass. 247 (1812), the action was against a corporate town yet the court holds briefly that *Russell v. Men of Devon* is conclusive against the action. Rand's editorial note in the 1850 edition of reports points out that *Russell v. Men of Devon* leads in fact to the opposite conclusion. In *Freeholders of Sussex v. Strader,* 18 N. J. L. 108 (1840) in which the board of freeholders was a corporation, the reference to the lack of corporate capacity in *Russell v. Men of Devon* is said to be "by way of argument" and is therefore disregarded. These two cases are plainly erroneous in their application of the English decision, and are probably among the decisions disapproved in *Weightman v. The Corporation of Washington,* 1 Black 39, 53, as based upon a misapplication of that case, yet scarcely a case can be found exempting a county from liability which does not have its roots in these cases.

Most of the confusion, however, has arisen from the use of the term "quasi corporation" in the early case of *Riddle v. Proprietors of Locks,* 7 Mass. 169 (1810). In this case the defendant, being a corporation, was held liable, and *Russell v. Men of Devon* is cited and distinguished in the following language:

"We distinguish between proper aggregate corporations, and the inhabitants of any district, who are by statute invested with particular powers without their consent. These are in the books sometimes called quasi corporations. Of this description are counties and hundreds, in England; and counties, towns, &c., in this state. Although quasi corporations are liable to information or indictment, for a neglect of a public duty imposed on them by law; yet it is settled in the case of *Russel & Al.* vs. *Inhabitants of the County of Devon,* that no private action can be maintained against them for a breach of their corporate duty, unless such action be given by statute. And the sound reason is, that, having no corporate fund, and no legal means of obtaining one, each corporator is liable to satisfy any judgment rendered against the corporation. This burden the common law will not impose, but in cases where the statute is

an authority, to which every man must be considered as assent-
ing. But in regular corporations, which have, or are supposed
to have, a corporate fund, this reason does not apply."

It is doubtful if the term "quasi corporations" was here used
with any other meaning than bodies which resemble corpora-
tions but which are not so in fact as contrasted with "regular"
corporations. Owing, however, to the reference to "particular"
powers and "without their consent" this dictum has become
standard authority for the proposition that corporations
expressly created as such are immune from liability for torts if
they were created involuntarily, and especially if their powers
are "particular" in the sense of limited in number. Thus in
*Mower v. Leicester* a quasi corporation becomes one "created by
the legislature for the purposes of public policy." In *Morey v.
Town of Newfane,* 8 Barb. 645 (N. Y. 1850), a quasi corpora-
tion is one of "those minor political organizations whose cor-
porate powers and functions are conferred without their solici-
tation for the benefit not of themselves but of the public at
large," and *Riddle v. Proprietors of Locks* is cited as authority
that quasi corporations are not liable for tort at common law.

Still later the impropriety of calling a complete though invol-
untary corporation a "quasi corporation" became so manifest
that the phrase becomes "quasi-municipal corporations" (20
Enc. Law 1191 n. 3) so that the student may infer that "quasi"
modifies "municipal" and not "corporation," and from this it is
an easy transition to "quasi municipalities." *Alberts v. Mus-
kegon,* 146 Mich. 210, 213.

Finally, the "particular powers" which obviously refers to
those in the nature of corporate powers, is construed to refer
to the power in connection with which the tort occurred, so
that *Riddle v. Proprietors of Locks* becomes authority for the
nonliability not only of municipalities whose corporate capacity
was involuntary but also those voluntary corporations which
have a general duty (e. g. keeping highways in repair) invol-

untarily imposed upon them. *Bigelow v. Randolph,* 14 Gray 541.

Another prolific source of misunderstanding is Lord Kenyon's remark in *Russell v. Men of Devon* "that where an action is brought against a corporation for damages those damages are not to be recovered against the corporators in their individual capacity, but out of their corporate estate: but if the county is to be considered as a corporation there is no corporation fund out of which satisfaction is to be made." This last phrase, taken from its context, has been made the basis of a line of reasoning entirely foreign to its original meaning.

See for example *Hedges v. County of Madison,* 6 Ill. 567 (1844) which says: "All these cases assume the ground that there is no corporate fund provided for this purpose and the same is applicable in the present case, for although each county is enabled to provide a fund for public purposes this fund cannot be diverted from their objects and appropriated to private indemnification without express provision of law for that purpose." In *Freeholders of Sussex v. Strader,* the court is "not sure that there is any corporate fund out of which the board of freeholders could rightfully pay these damages if any be recovered." In *Commissioners of Hamilton County v. Mighels,* 7 Oh. St. 110 (1857) the argument of lack of corporate fund "applies with great weight to the case at hand though it is true that counties in Ohio have a treasury and in it various funds."

To add still further to the confusion, cases which perceived even dimly that *Russell v. Men of Devon* was not satisfactory authority for holding a *corporate* county exempt from liability began to invent new reasons for exempting counties. This had to be done with care, because in many cases it was recognized that municipal corporations proper would be held liable on the same state of facts. In *Morey v. Town of Newfane,* 8 Barb. 645, lack of corporate capacity is recognized as the ground of the decision in *Russell v. Men of Devon,* and the court, looking

for other reasons, finds them in the case in Brooke's Abridgment, therein referred to, as founded upon a different consideration, namely, that "it is a public matter." This overlooks the reason for the case as stated in *Russell v. Men of Devon*, namely, "because the action must be brought against the public," (misquoted in *Weet v. Brockport*, 16 N. Y. 161, 167, as "the action must be brought by the public"), and starts a new series of cases which defends nonliability of counties on the ground of public policy, finally blossoming into the theory that counties are governmental agencies sharing the sovereign immunity of the state from suit (*Board, etc., of Jasper County v. Allman*, 142 Ind. 573), a doctrine about as far removed from the decision in *Russell v. Men of Devon* as it is possible to conceive. The case of *Commissioners of Hamilton County v. Mighels*, 7 Oh. St. 110, draws the distinction as follows:

"A municipal corporation proper is created mainly for the interest, advantage, and convenience of the locality and its people; a county organization is created almost exclusively with a view to the policy of the state at large, for purposes of political organization and civil administration, in matters of finance, of education, of provision for the poor, of military organization, of the means of travel and transport, and especially for the general administration of justice. With scarcely an exception, all the powers and functions of the county organization have a direct and exclusive reference to the general policy of the state, and are, in fact, but a branch of the general administration of that policy."

With cases holding counties immune because their powers are so limited that they can scarcely be called corporations at all, and others reaching the same result because their powers partake of the sovereign character of the states, it is not surprising to find the whole distinction between counties and cities repeatedly criticized and disapproved. In Thompson's later work he says: "The reason of the rule which, in many cases, charges a city, town or village with liability, and under the same condi-

tions of fact, exonerates a county, is artificial, and is to be sought for in historical sources: It is not supported· by legal reason or analogy." 5 Thomp. Com. on Neg. Sec. 5822. Another writer says: "If it be granted that a public corporation, such as a city, is liable because it is charged with a public duty and invested with means to enable it to perform that duty, it is logically impossible, as it seems to us, for one who proceeds on principle to avoid the conclusion that a county charged with a specific duty and provided with the means of performing it is likewise liable * * *. Both are governmental corporations invested with authority from a distinct locality and what ·is the duty of one is in its essential nature the duty of the other, and if one is liable for a breach of duty, if we keep to principle we must affirm that so also is the other." Elliott, Roads and Streets, 2d Ed., Sec. 52. See also Secs. 439, 444 and 449.

Judge Dillon says: "It must be confessed that it is not easy to find solid legal grounds to sustain the distinction. To a limited extent the same view has been elsewhere taken. It must be confessed that it is not easy to find a legal basis for the distinction between cities and counties in respect of the duty to keep the streets and highways under their respective jurisdictions in repair, whereby the former are held to an implied civil liability for damages caused by the neglect of this duty, and the latter are held not to be thus liable." 2 Dill. Mun. Corp. (3d Ed.), Sec. 998.

In Williams, Municipal Liability for Tort, there is an attempt to find a satisfactory basis for the distinction in question which is thus stated:

"The immunity. of a quasi corporation stands upon the ground, not that it is a governmental agency, but that its duty relative to highways is public and governmental; for though a governmental agency, it will be liable to a private action at common law at the suit of any person who may suffer special damage from the negligent performance of any duty that is not public and governmental in nature." Williams, Mun. Liab. Tort, Sec. 71.

This, however, brings us back from the character of the defendant to the nature of the tort, already discussed at length, and in the case at bar would put counties and municipal corporations on the same footing, for as the same author observes:

"The actual manual labor involved in grading and improving streets and highways is purely ministerial in character. It involves the exercise of no judgment or discretion on the part of the municipal authorities; it requires no deliberation for its accomplishment. When therefore the manual work of construction begins, the reason for the application of the usual rule of immunity ceases, and municipal corporations are held responsible in damages for the consequences of their negligence or lack of due skill in performing the actual work of grading and improving." Williams, Mun. Liab. Tort, Sec. 66.

Returning to Hawaii we find the question arising as one of first impression, as neither counties nor any other corporate subdivision of the Territory ever existed prior to the county act of 1905. Were there no judicial precedents contra to the line of cases above criticized (see for example *Anne Arundel County v. Duckett*, 20 Md. 468; 83 Am. Dec. 557), they would still be inapplicable to the newly created counties of Hawaii, which, except in name and corporate capacity, bear little resemblance to the counties of the various states, but whose powers, as defined by S. L. 1905, Act 39, are confined to the exercise of police powers and to the ministerial duties of conducting sewers, pumping stations, water works, lighting plants, fire departments, streets and highways. Whatever may be the authority for exempting counties on the theory that they are governmental agencies it cannot be applied to those that have no power to levy taxes, no county courts for the administration of justice, no control over matters of education, provision for the poor or military organization. They could as well be called "districts" as "counties," or, on the other hand, could be called "city and county," as has been subsequently done with the Island of Oahu, which has been converted from the "County

of Oahu" into the "City and County of Honolulu." S. L. 1907, Act 118. These differences make the extension of immunity to counties in Hawaii merely a blind adherence to nomenclature in the application of an erroneous principle. In *Eastman v. Clackamas County,* 32 Fed. 24, the court points out forcibly the misapplication of *Russell v. Men of Devon* and the fallacy of any distinction between corporate towns and corporate counties, saying:

"The reason given for this distinction—that the inhabitants of a town incorporated under a special statute consent thereto, while a county exists, without the consent of its inhabitants, simply as a subdivision of the state—shows that it is a distinction without any substantial difference.

"In 1 Thomp. Neg. (1st Ed.) 618, the author, after premising that the ground of the judgment in *Russell v. Devon Co.* is not sound when applied to counties in the western states, says:

" 'These counties are political bodies, having a common administrative board, elected by voters of the county, by which the business of the county is transacted. Through this board the county contracts and is contracted with, sues and is sued. Many counties issue negotiable securities in large amounts. Their administrative boards possess a limited power of taxation for county purposes. In these respects no substantial difference is perceived to exist between them and chartered municipal corporations. The argument that a liability should attach to the latter, and not to the former, because the latter are supposed to accept their charters voluntarily, while the duties and obligations annexed to the former are imposed on them involuntarily, is based on an assumption, in most cases, untrue in point of fact, and is, even where the premises are correct, fantastical and destitute of sense. There is no sound distinction between the sanction of an obligation voluntarily assumed by a public body and that of an obligation which the legislature, in the due exercise of its powers, has imposed upon it.' "

The theory that involuntary quasi corporations are not liable for negligence is referred to as "well settled" in *Barnes v. District of Columbia,* 91 U. S. 540, 552, but the court was there

referring to responsibility for "mere negligence" or more specifically to the neglect to keep highways in repair. In *Weet v. Brockport,* 16 N. Y. 161, there cited, the distinction as to the nature of the tort was taken, and the trustees of a village held liable in their corporate capacity for misfeasance. That a corporation is not to be classed as a "quasi-corporation" merely because involuntary, is shown by *Barnes v. District of Columbia* itself, in which the district was held liable for the negligence of its officers, in spite of the fact that not only its corporate capacity but also the duty neglected and the negligent officers were all imposed on it without its consent.

There is no "lack of corporate fund" in the present case, as the county receives an income from the Territory to be appropriated for any legal object, nor is the modern misapplication of this phrase tenable under the decision in *District of Columbia v. Woodbury,* 136 U. S. 450, 456, in which the court says:

"It is suggested that the District is without the means to perform the supposed neglected duty; that none of its officers can pay a judgment against it, and that no process against it could enforce payment; that even a mandamus against it to levy a tax would be futile because neither the District nor the Commissioners can levy a tax for any purpose; and that no judgment against it can be paid except by warrant upon the Treasury, pursuant to an appropriation by Congress. We do not perceive that these considerations materially affect the principle upon which the decision in the *Barnes Case* rests."

For these reasons we are of the opinion that the declaration states a cause of action against the defendant in this case.

The exceptions are sustained.

*Carl S. Smith* and *Albert F. Judd* for plaintiff.

*William L. Whitney,* Deputy Attorney General, (*C. R. Hemenway,* Attorney General, with him on the brief) for defendant.

Matsumura v. County of Hawaii, 19 Haw. 18.

DISSENTING OPINION OF WILDER, J.

Assuming, what is perhaps not technically averred, that the negligent act complained of was done in the course of maintaining and constructing the road, the question is whether the declaration sets forth a cause of action.

In the absence of statute, as a general rule, which is conceded by both plaintiff and defendant, counties as distinguished from what are called full municipal corporations, such as cities, are not liable in actions of this kind, the divergence of opinion being whether this defendant is within that rule. Counties are created for public purposes without regard to the actual wishes of their inhabitants and are in substance but agencies of the government for the purpose of aiding in the general administration thereof. The clothing of them with a corporate form is only done so that they may better perform their duties. They usually comprise large areas of territory which are not thickly settled and in which the relations of life and business are comparatively simple. On the other hand, municipal corporations proper are generally incorporated at the request or at least with the assent of their inhabitants by special charters or voluntarily organized under general laws. They have a greater variety of powers and duties, are usually confined within smaller and more compact limits, are more thickly settled, and the relations of life and business in them are more complex. Because of the difference in the nature of the two organizations it has been generally held that, as the functions of the one are in the main governmental and of the other corporate, an action of tort for negligence lies against a city but not against a county. This distinction, which seems to be upheld by reason of public policy, when viewed from the standpoint of reason, does not appear to be sound. Cities as much as counties are auxiliaries of the general government in the business of internal administration. In both cases their rights, privileges and functions are under the control of the legislature and by that body subject to be

changed, modified or repealed as the public welfare may be supposed to require, and neither one can justify its existence or any rights or privileges conferred upon it by anything like a contract. However that may be, the distinction is well established. *Coffield v. Territory,* 13 Haw. 478, 480. I prefer, however, not to rest the question of liability or nonliability in this case upon whether the defendant is within or without that rule, but upon the broad ground that the function of maintaining public highways, in the performance of which the alleged injury occurred, is a governmental one in this jurisdiction, with the necessary consequence that defendant is not liable.

Before the passage of the county act the maintenance and repair of public highways devolved upon the Territory. The Territory is not liable for injuries from defective streets. *Coffield v. Territory,* 13 Haw. 478. At that time road boards throughout the Territory and a road supervisor in the district of Kona on the Island of Oahu had charge of the work of repairing and maintaining public highways in their respective districts subject to more or less supervision by the superintendent of public works. R. L., Ch. 39, 48, 50. These road boards were required to expend the road taxes, which were a special deposit in the treasury, and moneys appropriated by the legislature, in making and repairing roads and bridges. They were agents of the general government discharging public duties for the public benefit. *Dillingham v. Hawaiian Government,* 9 Haw. 101, 106. Since the passage of the county act it has been provided that the road taxes, which are still a special deposit, "shall be expended in the making, maintaining and repairing of the public roads and highways in the several road districts wherein the same are collected and shall not be expended in any other district" or for any other purpose. Laws of 1905, Act 89, Sec. 5. The supervisors of each county have now the functions and authority of the different road boards and road supervisor, and it is provided that the "road taxes shall be expended only

for the making, maintaining and repairing of public roads and highways in the several road districts as authorized by the supervisors of the county from time to time," and these moneys may not be used for any other purpose. Laws of 1905, Act 93, Sec. 3. The function of repairing and maintaining public highways by the Territory is undoubtedly a governmental or public one. That the legislature has conferred on the counties the power to do the same thing does not change the nature of the function itself, which I think is the same now as before, namely, governmental. By the performance of this work counties receive no special benefit or profit any more than the Territory did formerly. Probably it is true that the residents of a county use its highways more frequently than residents of other parts of the Territory and in that sense may reap a greater benefit from them. But this is more emphatically true in respect, for instance, of policemen and firemen, for whose negligent acts counties would not be liable.

In Arkansas, California, Connecticut, Indian Territory, Massachusetts, Michigan, New Jersey, South Carolina and Vermont the duty of repairing and maintaining public highways is regarded as a governmental one, and in the absence of statute a municipality is not liable for negligence in respect thereto. *Arkadelphia v. Windham,* 49 Ark. 139; 4 Am. St. Rep. 32; 4 S. W. 450; *Winbigler v. Los Angeles,* 45 Cal. 36; *Hewison v. New Haven,* 37 Conn. 475; *Blaylock v. Muskogee,* 117 Fed. 125; *Hill v. Boston,* 122 Mass. 344; *Detroit v. Blackeby,* 21 Mich. 84; *Pray v. Jersey City,* 32 N. J. L. 394; *Young v. Charleston,* 20 S. C. 116; 47 Am. Rep. 827; *Bates v. Rutland,* 62 Vt. 178.

In the absence of statute a municipality is not liable for negligent acts of its policemen, firemen, health, school and charity officials. This is on the theory that the duties performed by these persons are governmental. Yet they are no more governmental than in the case of highways in this Territory.

Matsumura v. County of Hawaii, 19 Haw. 18.

Plaintiff, however, contends and the majority of the court agree with him that even if defendant is not liable for failing to keep public highways in repair it should be held liable for negligence in repairing, that is, that there is a liability in case of a misfeasance even if otherwise as to a nonfeasance. This distinction is referred to in some of the cases but on principle it does not appear to be sound because the function of repairing highways is governmental whether there is a failure to repair or a negligent repairing. In the late and well considered case of *Johnson v. Somerville,* 81 N. E. (Mass.) 268, it was held that no distinction can be made between negligent and intentional acts." See also *Alberts v. Muskegon,* 146 Mich. 210, and *Young v. Charleston,* 20 S. C. 116; 47 Am. Rep. 827.

In the case of *Johnson v. Somerville* plaintiff claimed damages by reason of the flooding of his cellar which was caused by an employee of defendant city in dumping ashes into a watercourse on an adjoining piece of land. The court said:

"If the plaintiff had been run over and injured through the negligence of a driver of one of the defendant's carts, while it was being used in the removal of the ashes here in question, he could not have recovered damages for the injury from the defendant city. That is established by the recent case of *Haley v. Boston,* 191 Mass. 291. The ground on which it is contended that the city is liable here is that the rule applied in *Haley v. Boston* is confined to cases of negligence and does not apply to injuries caused by intentional acts; that is to say, by acts which, if done on the plaintiff's land in place of being done on land not owned by the plaintiff, would be ground for an action of trespass quare clausum fregit, as distinguished from an action on the case. In the opinion of a majority of the court no distinction can be made between negligent and intentional acts."

*Alberts v. Muskegon,* 146 Mich. 210, is diametrically opposed to the conclusion of the majority in the case at bar. There plaintiff was the owner of a barn abutting on a certain avenue in defendant city, on which avenue defendant was operating a steam roller. Through the negligent action of defendant sparks

Matsumura v. County of Hawaii, 19 Haw. 18.

from the steam roller set fire to the barn and burned it up. The court held that the city was not liable. As it well said:

"The case at bar is not one of damages resulting from a direct trespass or from misfeasance of the city amounting to a trespass. It is a case of consequential injury resulting directly from the negligent conduct of the defendant's agents."

There, as here, the injury occurred to property outside the limits of the highway. There, as here, the injury would not have occurred but for the negligence of defendant. There, as here, the damages did not result from an act of the defendant amounting to a trespass.

Without discussing the cases cited by the majority to the effect that upon the facts alleged here an action lies against a municipal corporation in the absence of statute, it is sufficient to say that most of them are from states in which it is held that in the absence of statute an action lies against a municipal corporation for a failure to repair a highway, and naturally those courts hold that there is a right of action in a case like the one at bar. As to the cases cited by the majority from Massachusetts and Michigan and from other states which follow the rule of liability adopted there in case of a failure to repair, they, in so far as contrary to my conclusion, are in effect overruled and disposed of by the later cases to which I have referred.

I think that if the legislature had intended that counties should be liable in actions of this kind it would have expressed such intention in plain terms.

Plaintiff's claim that his property was taken in violation of the fifth amendment to the constitution is without merit.

For the foregoing reasons it is my opinion that the exceptions should be overruled.