## NICHOLAS PEREZ *v.* THE CITY AND COUNTY OF HONOLULU.

### No. 1727.

EXCEPTIONS FROM CIRCUIT COURT FIRST CIRCUIT.
HON. C. F. PARSONS, JUDGE.

ARGUED JANUARY 10, 1927.          DECIDED FEBRUARY 23, 1927.

PERRY, C. J., BANKS, J., AND CIRCUIT JUDGE MASSEE IN PLACE OF PARSONS, J., DISQUALIFIED.

MUNICIPAL CORPORATIONS—*liability for torts.*

> The City and County of Honolulu is not liable in damages for injuries to a person caused by the negligence of its agents and servants in operating a fire engine and a police patrol wagon.

OPINION OF THE COURT BY BANKS, J.

This case comes here on exceptions. The plaintiff sued the defendant for damages resulting from a collision, on one of the streets of Honolulu, between a fire engine and a police patrol wagon, both being at the

time under the operation and control of persons duly authorized to perform such duty. The complaint consists of three counts. In the first, the action is predicated on the negligence of those in charge of the fire engine; in the second, on the negligence of those in charge of the patrol wagon, and in the third, on the concurrent negligence of those in charge of the fire engine and those in charge of the patrol wagon. It appears from all the counts that at the time of the collision the fire engine was returning from a "fire call" and that the police patrol wagon was responding to a "fire call." It also appears from all the counts that the plaintiff had been convicted of a misdemeanor and had been sentenced to a term of confinement in the county jail; while so confined he had been made a "trusty" at the police station and while preparation was being made by the police department to answer the "fire call" the officer who had the custody of the plaintiff ordered him to go upon the patrol wagon; he did go upon the patrol wagon and was on it when the collision occurred. The defendant demurred to the complaint on the ground that none of the counts sets forth sufficient facts to constitute a cause of action. The demurrer was sustained and an exception taken. The reason given by the court below for sustaining the demurrer was that it appeared from the complaint that at the time of the collision the defendant was in the exercise of governmental functions and therefore was not liable to the plaintiff for the injuries incurred by him.

The City and County of Honolulu is a municipal corporation. As such it derives its existence and powers from legislative enactments of the Territory (Ch. 118, R. L. 1925). Like all such corporations it is regarded by the law in two aspects—one as the delegate or political division of the territorial government and empowered to exercise certain functions, governmental in their nature,

in which all people within the limits of the Territory are concerned; the other as a corporation empowered to administer, for its own benefit and the particular benefit of the people residing within its boundaries, the public affairs of the locality over which it is given jurisdiction. The things which it does under its authority as the delegate of the Territory are done in the exercise of purely governmental functions, that is, functions that are peculiarly appropriate to the territorial government itself. These functions belong to the central government because it is the organized representative of the entire citizenship of the Territory and is charged with the duty and responsibility of doing the things that are necessary for the common good. Some of these functions, however, for reasons of convenience, are performed through the agency of the City and County of Honolulu which, for such purposes, is a political division of the Territory, duly created by it and empowered to act on its behalf and in its stead.

It has too long been the law to be now questioned, that, in the absence of a permissive statute, a government charged with the duty and responsibility of regulating and controlling the social and political life of a people cannot be held liable for the malfeasance or misfeasance of officers and agents through whom its functions are exercised. This principle of law is founded on a wise and far-seeing public policy. It would subject governments to many hazards and embarrassments and possible destruction, if, without their consent, they could be sued and held liable for the acts of their officers and agents done and performed while in the exercise of political or governmental functions. This matter has so often been discussed by judicial and other law writers that further mention of it would be useless reiteration. It necessarily follows that since the government is immune

from such liability the municipality through which the government acts is likewise immune. The law on this subject is nowhere more clearly stated than in McQuillin on Municipal Corporations, Vol. 6, Sec. 2623, p. 5398, where the author says: *"The rule is firmly established in our law that where the municipal corporation is performing a duty imposed upon it as the agent of the state in the exercise of strictly governmental functions, there is no liability to private action on account of injuries resulting from the wrongful acts or negligence of its officers or agents thereunder, unless made liable by statute. In other words, °unless a right of action is given by statute, municipal corporations may not be held civilly liable to individuals for 'neglect to perform or negligence in performing' duties which are governmental in their nature, and including generally all duties existent or imposed upon them by law solely for the public benefit. Such liability may, however, be imposed by statute or charter."*

A different principle, however, governs if the act done by the municipality is in the exercise of a corporate or ministerial, as distinguished from a governmental, power. In the former its liability is determinable by the same rules of law that are applicable to individuals and private corporations. McQuillin, speaking on this subject, says in volume 6 of his work on municipal corporations, section 2622, page 5395: "In so far as municipal corporations exercise powers not of a governmental character, 'voluntarily assumed powers intended for the private advantage and benefit of the locality and its inhabitants, there seems to be no sufficient reason why they should be relieved from that liability to suit and measure of actual damage to which an individual or private corporation exercising the same powers for purposes essentially private would be liable;' and it is held that while acting

in its private capacity, a municipality is liable for negligence to the same extent as a private corporation or individual, and is liable to its *employees* to the same extent as other employers. Furthermore, for torts committed by its agents and servants in the performance of corporate or private duties the municipality is liable, whether the tortious act was done negligently or *intentionally.*"

It is contended by the plaintiff that section 1721, R. L. 1925, authorizes the maintenance of suits against the City and County of Honolulu for acts done in the performance of its governmental functions as well as those done in the performance of its administrative functions. The pertinent portion of the section is as follows: "Suits, actions and proceedings may likewise be brought against said city and county, at law or in equity, for the recovery of any money, property or thing belonging to any person, corporation, or the Territory, or for the enforcement of any rights of, or contracts with, or damages against, said city and county, or the heretofore existing county of Oahu, whether made or arising or accruing before or after April 30, 1907." The plaintiff's construction of this section is erroneous. Its manifest purpose is to authorize suits against the city and county when a cause of action which is recognized by law arises. It does not purport to enlarge the liability of the municipality so as to include acts for which it would not be liable at common law.

We thus come to the question whether the acts complained of and which resulted in injury to the plaintiff were done in the performance of governmental or administrative functions. If the former, the demurrer was properly sustained. If the latter, it should have been overruled. The line of demarcation between these two functions is often shadowy and not always easily distin-

guished.  Not so in the instant case.  The persons operating the police patrol wagon were responding to a "fire call" and were thus in the exercise of a police duty. Those operating the fire engine were returning from a "fire call" and in the performance of a duty that appertains to a fire department.

The organization, employment and maintenance of an adequate police force is certainly a governmental function.  The prevalence of crime in the City and County of Honolulu with all its demoralizing and hazardous results would be felt in every part of the islands.  Visitors from the other islands, as well as the residents of the City and County of Honolulu, would be in constant danger of attack and injury.  The apprehension of criminals escaping to Honolulu from other sections of the Territory would be greatly hindered and perhaps altogether defeated.  This is no new question.  It has been many times considered by text-writers and courts of last resort. It is the almost unanimous opinion of those who have written upon the subject that the maintenance of a police department is a governmental function.  It would prolong this opinion beyond necessary limits to cite all the authorities which sustain this conclusion.  It will suffice to quote some of the texts under which these authorities may be found:

"A municipal corporation can under ordinary conditions incur no liability by reason of the defaults of its police department.  The prevention of crime is a purely governmental function, undertaken for the benefit of the public at large, and, if police officers are appointed and paid by the various municipalities, this is done merely as a matter of convenient administration.  Their duties are ordinarily prescribed by law, and they are public officers and not the servants or agents of the city or town in which they serve."  19 R. C. L., p. 1119, Sec. 399.

"When, by the action of the state, a municipal corporation is charged with the preservation of the peace, and

empowered to appoint police boards and other agencies to that end, the corporation *pro tanto* is charged with governmental functions in the public interest and for public purposes, and in the exercise of its powers and duties in respect of the enactment and enforcement of police regulations it is entitled to the same immunity as the sovereign granting the power unless such liability is expressly declared by the sovereign. The police regulations of a city are not made and enforced in the interest of the city in its corporate capacity, but in the interest of the public. A city is not liable therefore for the acts of its officers in attempting to enforce such regulations, and further because police officers can in no sense be regarded as servants or agents of the city. Their duties are of a public nature. Their appointment is devolved upon cities and towns by the legislature as a convenient mode of exercising a function of government, but this does not render the cities and towns liable for their assaults, trespasses, or negligent acts." 28 Cyc. 1299.

"Agreeably to the principles just mentioned, *police officers appointed by a city are not its agents or servants* in such a sense as to render it responsible for their unlawful or negligent acts in the discharge of their public duties as policemen." 4 Dill. Mun. Corp., 5th ed., Sec. 1656.

It is equally clear that the organization and maintenance of a fire department is a governmental function. The power conferred upon the City and County of Honolulu to maintain fire departments was not conferred for the exclusive benefit of the residents of the municipality but for the benefit of all persons who may own property within its limits which is subject to fire hazards whether such persons reside in the City and County of Honolulu or elsewhere in the Territory. Many people residing in different portions of the Territory own buildings in the City and County of Honolulu and it is therefore a governmental duty to take necessary measures to protect such property against injury or destruction by fire. In a copious note appended to *Fowler* v. *City of Cleveland,*

9 A. L. R. 131, 143, the author makes the following statement: "The overwhelming weight of authority is to the effect that a fire department, maintained by a municipal corporation, belongs to the public or governmental branch of the municipality so as to relieve it, at least in the absence of statutory provision to the contrary, from liability for injuries to person or property resulting from malfeasance or nonfeasance connected with the maintenance and operation thereof." An examination of the cases cited convinces us that the law is correctly stated in the text. The reasons that have impelled so many courts to reach this conclusion are perhaps nowhere better stated than in *Lynch* v. *North Yakima,* 37 Wash. 657, 661, 12 L. R. A. (N. S.) 261, 80 Pac. 79, where the court said: "It is difficult to announce a rule as to just where liability of a municipality commences or where it ceases. But it may generally be accepted that a city is not liable for an improper discharge by its officers of a purely governmental function. The duties of an officer or employee of a fire department are regarded as for the benefit of the community, and not for the mere advantage of the municipality as a corporate body. The city, possessing, as it does, a portion of the sovereignty of the state, in the exercise thereof provides and maintains a fire department. The services of this department are for the benefit of all persons who may have property in the city limits capable of injury by fire. It would seem, therefore, that in creating, maintaining, and operating the fire department, the city was exercising governmental functions. This seems to have been the view entertained by the courts that have considered this subject. In the case at bar the respondent had provided, and was maintaining, a fire department. The horses, engines, and apparatus were under the charge of a fire chief. In view of these facts, and in view of the char-

acter of the employment in which appellant was engaged, it impresses us as a case where the circumstances of his injury occasion no liability upon the part of the city."

It is contended by the plaintiff that the law in this jurisdiction is otherwise and in support of this contention he cites *Matsumura* v. *County of Hawaii,* 19 Haw. 18. The decision in the *Matsumura* case was predicated on a complaint that alleged in substance that one Keola, while employed as an agent and servant of the defendant in maintaining and constructing a public highway, did wilfully, negligently and in total disregard of the rights and property of the plaintiff divert the course of a large stream of water then and there flowing in a certain wooden flume, that said stream of water so diverted by the agent and servant of the defendant did rush with great force into and undermine a certain large mound or bank consisting of earth and rocks and that the earth and rocks were thus precipitated against the defendant's property consisting of dwelling house, stables, etc., to the plaintiff's injury. The complaint was demurred to on the ground that it did not state a cause of action against the defendant. The demurrer was sustained by the trial court and the complaint dismissed. On review of this ruling this court held that the complaint did state a cause of action and the judgment was reversed. The syllabus, which was prepared by the court itself and which indicates the question intended to be decided, is as follows: "A county in Hawaii is liable for injury to private property in the nature of a trespass caused by the negligent act of a road employee while repairing a public highway." A careful study of the opinion discloses that it is somewhat broader in scope than the syllabus and discusses generally the principles upon which the liability of *municipal corporations* and that of *counties* for injuries caused by acts unlawfully done or

omitted in the construction and maintenance of public highways is to be determined.

The phase of the subject first considered was whether, on principles applicable to *municipal corporations,* the defendant was liable under the allegations of the complaint. After considerable discussion and a review of several cases, an affirmative conclusion was reached. The court then proceeds to inquire whether the defendant is *exempt* from liability as a *county.* The query was formulated as follows: "If, then, a municipal corporation would be liable in this action, is there any authority for the exemption of the County of Hawaii, which has been expressly created a corporation empowered to sue and be sued, upon the ground that it is a county?" Being advised, of course, that in many jurisdictions it had been decided under circumstances similar to those in the *Matsumura* case that *municipal corporations* are liable on the ground that so far as they are concerned the construction and maintenance of streets and highways is an *administrative* and not a governmental function and in the same jurisdictions it had been held that *counties* are not liable because the function delegated to them to construct and maintain public roads is *governmental,* the court then exposes the fallacy of the reasoning upon which this distinction between the liability of *municipal corporations* and that of *counties* is predicated. Having done this, it declines to follow these cases in so far as they extend immunity to *counties,* preferring to place them, in that regard, on the same footing as *municipal corporations.* Assuming, however, but not agreeing, that the rule exempting counties from liability is sound, the court, nevertheless, concludes that it has no application to the counties of Hawaii because the territorial government did not delegate to them those high qualities of sovereignty, such as the power "to levy taxes, organize

county courts for the administration of justice, control matters of education, provide for the poor and maintain military organizations" that the States had delegated to their counties but that they were "confined to the exercise of police powers and to the ministerial duties of conducting sewers, pumping stations, water works, lighting plants, fire departments, streets and highways" and therefore are not to be classed as counties. The argument of the court on this point is thus expressed: "Returning to Hawaii we find the question arising as one of first impression, as neither counties nor any other corporate subdivision of the Territory ever existed prior to the county act of 1905. Were there no judicial precedents contra to the line of cases above criticized (see for example *Anne Arundel County* v. *Duckett,* 20 Md. 468; 83 Am. Dec. 557), they would still be inapplicable to the newly created counties of Hawaii, which, except in name and corporate capacity, bear little resemblance to the counties of the various states, but whose powers, as defined by S. L. 1905, Act 39, are confined to the exercise of police powers and to the ministerial duties of conducting sewers, pumping stations, water works, lighting plants, fire departments, streets and highways. Whatever may be the authority for exempting counties on the theory that they are governmental agencies it cannot be applied to those that have no power to levy taxes, no county courts for the administration of justice, no control over matters of education, provision for the poor or military organization. They could as well be called 'districts' as 'counties,' or, on the other hand, could be called 'city and county,' as has been subsequently done with the Island of Oahu, which has been converted from the 'County of Oahu' into the 'City and County of Honolulu.' S. L. 1907, Act 118. These differences make the extension of immunity to counties in

Hawaii merely a blind adherence to nomenclature in the application of an erroneous principle." It is necessary to a proper understanding of this reasoning to keep in mind that the purpose of the court was to establish the thesis that the counties of Hawaii are in law not "counties" and therefore to extend to them immunity from liability for the kind of tort complained of in the case under consideration, simply because they are denominated "counties" by statute, would "be a blind adherence to nomenclature in the application of an erroneous principle." Of course, the "erroneous principle" referred to was that previously mentioned, namely, that the construction and maintenance of public highways by *counties* was a governmental and not an administrative function. It is apparent that it had no thought of declaring that as municipal corporations they were not endowed with any governmental functions whatever and were, therefore, liable to the same extent and for the same causes that individuals and private corporations are liable. If it had intended to let down the bars and expose the counties to liability for every tort wilfully or negligently committed, whether in the exercise of governmental functions or in the performance of mere administrative duties, it would not have left such a vital conclusion to be drawn by obscure inference. That it had no such intention is indicated by its division of the functions bestowed upon the "counties" of the Territory into "police powers" (which are governmental in their nature) and certain duties which the court thought were merely "ministerial." It is true that in enumerating these "ministerial duties" that of conducting "fire departments" was included. This, however, is pure dictum and therefore not binding. There was no such question involved in the case. The only power the defendant was

exercising at the time of the injuries complained of was that of maintaining highways.

The *Matsumura* case has been twice cited in subsequent decisions of this court. First, in *Halawa Plantation* v. *County of Hawaii*, 22 Haw. 753, 755 (affirmed on appeal to the ninth circuit court of appeals, 239 Fed. 836), and again in *Reinhardt* v. *County of Maui*, 23 Haw. 102, 104. In each of these cases the cause of action grew out of the construction and maintenance of public highways and therefore the *Matsumura* case was directly in point. In the *Reinhardt* case the court evidently took the same view of the *Matsumura* case that we take. At page 106 the court, speaking of the *Matsumura* case and the *Halawa* case, said: "Those cases are to be regarded as having established in this jurisdiction the rule that the liability of counties with respect to the repair and, therefore, the non-repair of highways is governed by the law applicable to municipal corporations, and that counties do not enjoy the immunity accorded to quasi-corporations."

For the foregoing reasons the exceptions are overruled.

*H. E. Stafford* (also on the briefs) for plaintiff.

*G. D. Crozier*, Deputy City and County Attorney (*Carrick H. Buck*, Deputy City and County Attorney, on the brief), for defendant.